The PEOPLE of the State of
Colorado, Petitioner,

v.

Norman Wayne WILSON, Respondent.

No. 91SC338.

Supreme Court of Colorado,
En Banc.

Sept. 21, 1992.

As Modified on Denial of Rehearing
Oct. 13, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., John J. Krause, Katherine M. Clark, Asst. Attys. Gen., Denver, for respondent.

David F. Vela, State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for petitioner.

Justice QUINN delivered the Opinion of the Court.

We granted the People's petition for certiorari to review the decision of the court of appeals in *People v. Wilson*, 821 P.2d 824 (Colo.App.1991), which reversed a judgment of conviction entered on jury verdicts finding the defendant, Norman Wayne Wilson, guilty of two counts of sexual assault on a child. In remanding the case for a new trial, the court of appeals held that the trial court committed plain error in violation of section 13–25–129(2), 6A C.R.S. (1987), when it failed *sua sponte* to instruct the jury contemporaneously with the ad-

mission of hearsay testimony of several witnesses concerning the child victims' out-of-court statements describing the sexual offense to them. A review of the record convinces us that the trial court's failure to give the cautionary instruction required by section 13–25–129(2) when each prosecution witness testified to the child victims' hearsay statements did not so undermine the fundamental fairness of the trial as to constitute plain error. We accordingly reverse the judgment of the court of appeals with respect to that issue. Because the court of appeals failed to consider other issues which the defendant raised in his appeal to that court, including the claim that the trial court failed to conduct an *in limine* hearing required by section 13–25–129(1)(a) on the reliability of the child victims' hearsay statements, we remand the case to the court of appeals for resolution of those issues.

### I.

We deal with a plain-error issue, and a detailed summary of the evidentiary and procedural history of this case is necessary to place the issue before us in proper context. The defendant was charged by information with two counts of sexual assault on a child, stemming from incidents involving two victims. One of the victims was the defendant's stepson, J.N., and the other victim was the defendant's niece by marriage, J.D. The prosecution alleged that the date of the sexual assault on J.N. was between December 27, 1986, and January 4, 1987, and the date of the sexual assault involving J.D. occurred between October 10, 1984, and May 1985. J.N., who was thirteen years old at the time of trial, was eleven or twelve years old when the alleged assaults took place. J.D. was twelve years old at trial and eight or nine years old at the time of the alleged sexual assaults on her.

Pursuant to section 13–25–129(3), 6A C.R.S. (1987), the prosecution filed a pretrial notice of its intention to offer hearsay statements of the child victims into evidence during the trial through the testimony of several witnesses. The trial court, prior to the presentation of the prosecution's case, conducted a hearing for the purpose of determining the reliability of the hearsay testimony of one of the prosecution witnesses, Joann Sapp. At this hearing Ms. Sapp, who was J.N.'s special education teacher during the time in question, testified that throughout the week of January 5, 1987, J.N. was extremely disturbed, cried frequently, and acted as if he wanted to talk to her about something. On Friday of that week Ms. Sapp finally asked J.N. if someone was having sex with him. J.N. responded to that question by telling Ms. Sapp that every weekend "old Wilson" forces him to commit fellatio and uses a vibrator on him.[1] The trial court ruled that J.N.'s statement qualified for admission under section 13–25–129(1)(a).[2] The prosecution, however, did not present evidence re-

---

1. Ms. Sapp testified, in relevant part, as follows:
   One day I kept him all morning because he was just—he just literally could not have gone to a class. Later I told his teacher and she said, "What in the world is wrong with him?" and I said I didn't know, but something is. So on Friday he was just really bizarre. So while we were eating and just sitting there I just looked him in the eye and I said, "[J.N.], is someone having sex with you?" which is not a question I have ever asked a child before or since, and he put down his fork and he took a deep breath and he said, "Mrs. Sapp, I have got to tell you something," and then he said, "Every Saturday and every Sunday old Wilson puts his big cock in my mouth and makes me suck him until he comes," and I said—I can't remember what all I said, but I thought, gee whiz, and then he stood up and he shook his hand at the floor and he was just so angry and so frightened when he was doing this and he said, "He tells me, 'sucker, get in here, you get in here right now,' " and he talked for a while and I let him keep talking. Then I said, "You know, [J.N.], I have to go tell someone else. Will you be okay while I leave the room for a few minutes?" and he said he would.

2. The trial court also ruled that J.N.'s statement to Ms. Sapp qualified for admission under the "excited utterance" hearsay exception. CRE 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." We consider here only the hearsay exception created by section 13–25–129 and do not address the trial court's alternative basis for admitting J.N.'s statement.

lating to any other hearsay statements of the child victims, and consequently the trial court made no ruling on whether "the time, content, and circumstances" of those other hearsay statements provided "sufficient safeguards of reliability" as required by section 13–25–129(1)(a).

Ms. Sapp was the first prosecution witness to testify at trial. Immediately prior to her testimony regarding J.N.'s statement to her, the trial court instructed the jury as follows:

The conversation I would indicate, ladies and gentlemen, that you are going to be hearing is a statement made by the child [J.N.] to this particular witness. It is my duty to instruct you that it is the duty of the jury to determine the weight and credit to be given the statement you are about to hear; that in making that determination that you shall consider the age and the maturity of the child, nature of the statement, the circumstances under which the statement was made, and any other factor that you consider to be relevant.

Ms. Sapp then recounted before the jury J.N.'s statement to her. On cross-examination of Ms. Sapp, the defense elicited testimony indicating that J.N. was a disturbed child. The defense offered and the court admitted into evidence J.N.'s school records showing that J.N. was a seriously maladjusted boy with emotional disorders that predated the defendant's relationship with J.N.'s mother. The defense also elicited testimony from Ms. Sapp that J.N. had lied to her about a previous incident involving the defendant, in which J.N. claimed that the defendant had kicked him in the head. According to Ms. Sapp, J.N. later recanted this story and stated to her, "I hate old Wilson so much I just wanted to get him in trouble."

Both J.N. and J.D. testified at trial. J.N. testified that the defendant, on several weekends, forced him to engage in oral sex and simulated sexual intercourse with him. J.N. further testified that he told no one except J.D., his cousin, of these incidents until January 2, 1987, when he told a schoolmate, who urged him to tell an adult.

One week later J.N. told Ms. Sapp of his problem and also several other persons. J.D. testified at trial that the defendant fondled her chest several times and on one occasion forced her to take off her clothes and lay on top of the defendant while he simulated sexual intercourse.

The prosecution called six other witnesses who testified in varying degrees to statements made to them by J.N. and J.D. Five of those witnesses had been listed on the prosecution's pretrial notice of intent to offer at trial hearsay evidence of the child victims' out-of-court statements. The defense made no objection to these statements, and the trial court did not conduct a hearing outside the presence of the jury on the admissibility of the statements.

One of these witnesses was Doctor Geoffrey Heron, a psychiatrist who treated J.N. in the hospital in July 1987, after J.N. tried to commit suicide by attempting to throw himself out of a moving car. The doctor, in the course of his testimony, briefly stated that J.N. "told me that he had been sexually abused and that he was having flashbacks about this experience." The doctor made only one other reference during his direct examination to the fact that J.N. had told him that he had been sexually abused. The defendant did not request nor did the trial court give the jury a cautionary instruction on Doctor Heron's hearsay testimony.

J.N.'s schoolmate, who was thirteen years old at the time of the trial, testified that J.N. had told him about the defendant's sexual assaults in early January 1987. The schoolmate's hearsay testimony basically consisted of J.N.'s statement to him that the defendant "made him suck his penis" and was trying to have sex with J.D. No cautionary instruction was requested or given during the schoolmate's testimony.

A clinical psychologist, Doctor Robert Pelc, testified about his examination of J.D. in 1987. The purpose of the doctor's examination was to evaluate whether J.D. manifested the characteristics usually associated with sexually abused children. The doctor stated that he did not attempt to investigate what might have occurred between

J.D. and the defendant, but was primarily interested in evaluating J.D.'s mental status. In the course of his testimony, Doctor Pelc stated that on one occasion J.D. said that she had been "touched" by the defendant. Again, no cautionary instruction was either requested or given in connection with the doctor's passing reference to J.D.'s statement.

The prosecution also called J.N.'s mother. The mother stated that she was present at the Thornton police station on January 9, 1987, when J.N. told Detective Richard Martin that "Mr. Wilson had pulled him in on Saturday mornings and told him to undress, perform oral sex on him, and to kiss him on the lips and lay on top of him and to put his penis in between ... his legs and rub up and down." No cautionary instruction was requested or given during Ms. Wilson's hearsay testimony.

An Adams County social services worker, Patricia Berdiales, was also present at the police station and testified to a statement made by J.D. at that time. Ms. Berdiales testified that in response to general questions about problems in the home, J.D. stated:

> She said when she was in the third grade, sometime shortly after school started, that Mr. Wilson had asked her to go into his bedroom and that he had asked her to kiss him. The incident then evolved into his asking her to lie on top of him, which she refused to do. He then got her onto the bed and laid on top of her. She then described that he had sex with her and I said, "Tell me what you mean by having sex with somebody," and she said, "Well, all of our body parts were touching except our faces," and I said, "I'm still not real sure about what you mean. What would have happened if you weren't having sex? Tell me more about it," and she indicated she had a lot of difficulty with that concept, but what she ultimately ended up saying, after we identified some body parts, was that he had ... placed [his

penis] between her legs and gone up and down for about twenty minutes.

Ms. Berdiales also testified that J.D. at that time reported other incidents involving sexual assaults by the defendant.

After Ms. Berdiales testified, defense counsel asked the court to give a cautionary instruction on the hearsay statements of the child victims. The court granted that request and gave the following instruction during the testimony of the prosecution's next witness, Detective Richard Martin,[3] who merely confirmed the previous testimony of J.N.'s mother about the children's statements at the police station on January 9, 1987:

> In regard to [Detective Martin's testimony about statements made by the children] and also the testimony of Ms. Berdiales, you have heard the testimony of witnesses concerning out-of-court statements made by the two children witnesses. I would indicate to you, ladies and gentlemen, as I have before, that it is for the jury to determine the weight and credit to be given the statement and in making the determination you should consider the age and maturity of the child, the nature of the circumstances under which the statement was made, and any other fact that you determine to be relevant.

The defendant elected not to testify in his defense, but presented alibi evidence that he was working on one of the dates of the alleged sexual assault described by J.N. and was watching a football game with a friend of his on another of the dates.

At the conclusion of the evidence, the court included in its charge to the jury the following instruction concerning child hearsay statements:

> During the course of the trial you heard testimony about out-of-court statements of children. It is for you, the jury, to determine the weight and credit to be given the statements and that, in making the determination, you shall consider the age and maturity of the child, the nature

---

**3.** Detective Martin was the only witness testifying to a hearsay statement of one of the child victims who was *not* listed in the prosecution's pretrial motion of intent filed pursuant to section 13–25–129(3), 6A C.R.S. (1987).

of the statement(s), the circumstances under which the statement was made, and any other relevant factor(s).

The defendant was found guilty of both counts of sexual assault on a child and was sentenced to concurrent terms of twenty-four and ten years.[4]

The defendant appealed to the court of appeals on several grounds, including claims that the trial court's failure to give a cautionary instruction contemporaneously with the receipt into evidence of each statement constituted plain error, as did the court's failure to conduct an *in limine* hearing on the reliability of each of the child victims' hearsay statements. The court of appeals reversed the judgment of conviction and remanded the case for a new trial. Acknowledging that the contemporaneous cautionary instruction was given by the trial court when Ms. Sapp and Detective Martin testified, and was also given at the conclusion of the evidence in the court's general charge to the jury, the court of appeals nonetheless was of the view that the trial court's procedure was deficient. According to the court of appeals, the cautionary instruction given by the trial court provided no assurance that the jury understood the instructions to include "not only the testimony of the witness then on the witness stand," but also the testimony of "other witnesses who testified to explicit acts of sexual assault reported to them by the children." 821 P.2d at 826. The court of appeals thus concluded that the trial court's failure *sua sponte* to give the cautionary instruction contemporaneously with the hearsay testimony of each witness constituted plain error. *Id.* The court of ap-

peals did not address the defendant's claim that the trial court erred in failing to conduct an *in limine* hearing to determine the reliability of the child victims' hearsay statements made to witnesses other than Ms. Sapp, nor did it address other claims raised by the defendant in his appeal.[5]

The People thereafter filed in this court a petition for certiorari, requesting that we review the court of appeals' resolution of the plain-error claim with respect to the trial court's failure to give the cautionary instruction contemporaneously with the hearsay testimony of each prosecution witness. The defendant cross-petitioned for certiorari on those claims raised by him in the court of appeals but not addressed by the court of appeals' decision. We granted the People's petition and denied the defendant's cross-petition.

## II.

Before resolving the merits of the People's claim, we first outline the procedural scheme created by section 13–25–129, 6A C.R.S. (1987), for admitting hearsay statements of child victims of unlawful sexual offenses, and then review our prior decisions that have considered the plain-error rule under circumstances where a trial court has not strictly adhered to the statutory scheme.

## A.

Subsection (1) of section 13–25–129 states, in pertinent part, as follows:

An out-of-court statement made by a child ... describing any act of sexual

---

4. The trial court also instructed the jury on the lesser offense of child abuse, a class 1 misdemeanor, § 18–6–401(1) & (7)(a)(V), 8B C.R.S. (1986 & 1991 Supp.). The jury returned two guilty verdicts on the lesser offenses, and the trial court sentenced the defendant to twenty-four months on each conviction concurrently with each other and concurrently with the sentences imposed on the felony convictions for sexual assault on a child. No issue is raised here concerning the propriety of submitting the lesser offense to the jury.

5. The other grounds for reversal asserted by the defendant and not addressed by the court of appeals were as follows: the trial court erred in

failing to give the cautionary instruction for similar transaction evidence, as required by section 16–10–301(3), 8A C.R.S. (1986), contemporaneously with the receipt of the evidence; the trial court erred in admitting a hearsay document of scheduled Denver Bronco football games during the 1986–87 season; the trial court unduly burdened the defendant's constitutional right to testify; the trial court erred in failing to answer a jury question during deliberation; the trial court denied the defendant his constitutional right to be present during proceedings on the jury question; and the trial court's cumulative errors denied the defendant a fair trial.

contact, intrusion, or penetration, as defined in section 18–3–401, C.R.S., performed with, by, on, or in the presence of the child declarant, not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay, is admissible in evidence in any criminal ... proceeding[ ] in which a child is a victim of an unlawful sexual offense, as defined in section 18–3–411(1), C.R.S. . . . .

The statutory scheme requires the proponent of the child victim's statement to give the adverse party reasonable notice of an intent to offer the statement and the particulars of the statement. § 13–25–129(3), 6A C.R.S. (1987). Before admitting the child's statement into evidence, the trial court must conduct a hearing outside the presence of the jury and determine that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." § 13–25–129(1)(a), 6A C.R.S. (1987). In addition, the statute requires that the child victim either testify at the proceeding or be "unavailable as a witness and there [be] corroborative evidence of the act which is the subject of the statement." § 13–25–129(1)(b), 6A C.R.S. (1987). If the trial court rules the child victim's statement admissible, it must instruct the jury "that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, [the jury] shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." § 13–25–129(2), 6A C.R.S. (1987).

The statutory scheme "attempts to effectuate the dual goals of protecting child victims of sexual offenses by creating a special hearsay exception for the child's out-of-court statements regarding a sexual offense and of safeguarding the right of an accused, in a manner consistent with the United States and Colorado Constitutions, to confront the witnesses testifying against him." *People v. Bowers,* 801 P.2d 511, 517 (Colo.1990). In light of that purpose, we have interpreted section 13–25–129 as constituting "the exclusive basis for admitting a child victim's hearsay statement of a sexual act committed against the child when such hearsay statement is not otherwise admissible under any other specific hearsay exception created by statute or court rule." *Id.; see People v. Diefenderfer,* 784 P.2d 741, 751–52 (Colo.1989).

### B.

■ As a general rule, error may not be predicated upon the admission of evidence unless a substantial right of the party is adversely affected by the ruling and a timely objection or motion to strike appears of record, stating the specific ground of the objection if the specific ground was not apparent from the context. CRE 103(a). Both appellate and trial courts are required to disregard any error or defect not adversely affecting the substantial right of a party. CAR 35(e); Crim.P. 52(a). An exception to the contemporaneous objection rule, however, exists in the case of plain error. A court is not precluded from noticing plain errors adversely affecting substantial rights even though those errors were not brought to the attention of the court. CAR 35(e); CRE 103(d); Crim.P. 52(b). In *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987), after remarking that our prior decisions have utilized various formulations of the appropriate standard for evaluating plain-error claims, we held as follows:

> Since the plain-error rule ... is calculated to temper the contemporaneous-objection requirement in the interests of permitting an appellate court to correct particularly egregious errors, we believe the appropriate standard for plain-error review is whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.

■ Because the plain-error standard of review necessarily requires an appellate court to assess the basic fairness of the trial in light of the entire evidentiary record, it is not surprising that we have reached diverse results in assessing whether a trial court's failure to give the caution-

ary instruction required by section 13–25–129(2) amounted to plain error. In *People v. Wood*, 743 P.2d 422 (Colo.1987), for example, we found no plain error under circumstances where the trial court did not give the statutory cautionary instruction at any time, either contemporaneously with the hearsay testimony of the child victim's schoolmate regarding the victim's statement about the sexual assault committed by the defendant or in the general charge to the jury at the conclusion of the evidence. We reached this result because we were satisfied that "the jury was adequately made aware of its responsibility to examine the credibility of the witnesses, including the victim's schoolmate," and because the schoolmate's testimony "was merely corroborative of the victim's." *Id.* at 428. In view of the state of the record in *Wood*, we could not say with fair assurance that "the omission to instruct the jury in accordance with section 13–25–129(2) so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Id.*

In contrast to *Wood*, we reversed a conviction for sexual assault on a child in *People v. McClure*, 779 P.2d 864 (Colo. 1989), on the basis of the plain-error rule. In *McClure*, the trial court failed to give the statutory cautionary instruction at any time notwithstanding the fact that five witnesses, including two qualified experts and a police officer, testified extensively as to the details of the sexual assault reported to them by the child. In concluding that the trial court's failure to give the statutory cautionary instruction constituted plain error, we focused on several factors which, in our view, distinguished *McClure* from *Wood*. These factors included the number of witnesses testifying (five in *McClure* in contrast to one in *Wood*), the credentials of some of these witnesses as experts (a factor not present in *Wood*), the risk that the jury might give increased weight to the expert testimony, the mutually corroborating nature of the testimony of the five witnesses, and the bolstering effect of the testimony upon the credibility of the child victim. *Id.* at 867. In the course of our opinion, we emphasized that a trial court

should give the cautionary instruction whenever the hearsay exception created by section 13–25–129 is relied on as the basis for admitting the hearsay testimony even though the defendant does not specifically request a cautionary instruction. *Id.* In *McClure*, however, we merely distinguished but did not overrule *Wood*, thus indicating that *McClure*, as our prior decision in *Wood*, was grounded in the particular evidentiary state of the record in that case. Consequently, *McClure* should not be read for the proposition that a trial court's failure to give the statutory cautionary instruction will always constitute plain error.

Our opinion in *Diefenderfer*, 784 P.2d 741, issued approximately two months after *McClure*, makes clear that *McClure* was a fact-specific decision. In *Diefenderfer* the trial court failed to give the statutory cautionary instruction contemporaneously with the hearsay testimony of a district attorney investigator describing the child victim's statements to the investigator and a social services case worker. We found no plain error in *Diefenderfer* and distinguished *McClure*, stating:

> In this case, unlike in *McClure*, the jury did receive the statutory instruction of section 13–25–129(2) on two occasions: once prior to [psychiatrist] VanScoyk's testimony and again on the charge to the jury. Under these circumstances, the failure to instruct the jury again prior to [the district attorney investigator's] testimony was not plain error.

*Id.* at 752 n. 10.

While the results of these cases turn on their particular facts, each decision echoes a common theme that is consistent with our plain-error standard of review—namely, that plain error will be found only if we can say with fair assurance that the trial court's failure to give the statutory cautionary instruction so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. It is that standard that must guide our analysis of the evidentiary and procedural state of the record in the instant case.

### III.

■ In reversing the judgment of conviction and remanding the case for a new trial, the court of appeals relied heavily on our prior decision in *McClure*, 779 P.2d 864, and stated that "the need for *contemporaneous* instruction as required by § 13-25-129(2) at the very time of the reception of the evidence cannot be overemphasized" and that "[o]nly then can an appellate court say with fair assurance that plain error has been averted." *Wilson*, 821 P.2d at 826. The court of appeals thus seems to have read *McClure* to require reversal solely because the trial court failed to give the cautionary instruction required by section 13-25-129(2) contemporaneously with the hearsay testimony of each prosecution witness who testified to the child victims' descriptions of the sexual assault as reported to the witness. Such an interpretation of *McClure* is inconsistent with our prior case law and is expressly disapproved.

With that preliminary matter aside, we turn to whether the trial court's failure to give the statutory cautionary instruction upon receipt of the hearsay testimony from each of the prosecution witnesses constituted plain error.[6] The record shows that the trial court gave the cautionary instruction when the prosecution's first witness, Ms. Sapp, testified concerning J.N.'s report to her of the sexual offenses. In addition, the court again gave the cautionary instruction when the prosecution's last witness, Detective Martin, testified. This second cautionary instruction expressly referred not only to the testimony of Detective Martin but also to the hearsay testimony of the prior prosecution witness, Ms. Berdiales, who testified to the particulars of J.D.'s hearsay statement. While the remaining prosecution witnesses—Doctor Heron, J.N.'s schoolmate, Doctor Pelc, and J.N.'s mother—testified about the children's hearsay report of the sexual offenses, their hearsay testimony was substantially less detailed than the testimony of Ms. Sapp and Ms. Berdiales. Doctor Heron and Doctor Pelc made only passing references to the children's statements. Similarly, the schoolmate's testimony was fairly brief when compared with the testimony of J.N. and J.D., both of whom testified in detail about the actions of the defendant. In regard to the hearsay testimony by J.N.'s mother, it was limited to a description of the very same statement that J.N. made to Detective Martin while J.N.'s mother was present at the Thornton police station. In light of the fact that the trial court gave a cautionary instruction during Detective Martin's testimony, it is reasonable to infer that the jury followed the court's cautionary directions in evaluating the comparable hearsay testimony of J.N.'s mother.

Furthermore, at the conclusion of the evidence the trial court gave the cautionary instruction in its general charge to the jury

---

**6.** The People, in addition to claiming that no plain error occurred in this case, argue in their brief that the hearsay testimony of only one of the prosecution witnesses, Joann Sapp, was admitted pursuant to section 13-25-129 and that the hearsay testimony of the other prosecution witnesses recounting the children's statements to them qualified for admission under some recognized hearsay exception—such as an excited utterance, CRE 803(2) or a statement for purposes of medical diagnosis or treatment, CRE 803(4)—or was admissible as nonhearsay evidence in the nature of a prior consistent statement under CRE 801(d)(1)(B), which provides that a statement is not hearsay if the declarant testifies at trial, is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. In our view, it is unnecessary to decide here whether the children's reports of the sexual assaults qualified for admission under a recognized hearsay exception or as nonhearsay testimony. The reason we need not decide this question is because, even if we assume that section 13-25-129 constituted the only basis for admitting the hearsay evidence of the children's statements describing the sexual assaults on them, the trial court's failure to give the statutory cautionary instruction contemporaneously with the hearsay testimony of each of the prosecution witnesses did not amount to plain error under the facts and circumstances of this case. Furthermore, nothing of record suggests that the children's hearsay statements were offered or were received into evidence on any basis other than the statutory hearsay exception created by section 13-25-129. We thus express no opinion on whether any of the hearsay evidence might satisfy some other recognized hearsay exception or be admissible as nonhearsay evidence.

and again told the jurors that it was their prerogative to determine the weight and credit to be given to the hearsay statements of the children and that, in making that determination, they should consider the age and maturity of the child, the nature of the particular statement, the circumstances under which the statement was made, and any other relevant factors. The trial court supplemented this cautionary instruction with an instruction on the credibility of witnesses, emphasizing that it was the function of the jury to determine what testimony to believe. This latter instruction further stated:

Consider each witness' knowledge, motive, state of mind, demeanor, and manner while on the stand. Consider the witness' means of knowledge, ability to observe, and strength of memory. Consider any relationship each witness may have to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case. You should consider all facts and circumstances shown by the evidence which affects the credibility of the witness' testimony.

You may believe all of the testimony of a witness, or part of it, or none of it.[7]

Under the state of the record before us, we would be engaging in utter speculation were we to conclude that the jury was somehow misled into evaluating the hearsay testimony of Doctor Heron, Doctor Pelc, J.N.'s schoolmate, and J.N.'s mother by a standard different from the standard applicable to the hearsay testimony of Ms. Sapp, Ms. Berdiales, and Detective Martin. In contrast to *McClure*, 779 P.2d 864, in which no cautionary instruction was given at any time during the trial, the trial court in the instant case gave the required cautionary instruction three times. In that respect, the circumstances of this case are more analogous to those of *Diefenderfer*, 784 P.2d at 752, where the trial court, although failing to give the cautionary instruction when each witness testified to the child victim's hearsay statement, gave the instruction twice during the trial. We found no plain error in *Diefenderfer*, and we find no plain error in this case. In making that determination we do not mean to imply that the trial court did not err in failing to give the statutory cautionary instruction when each prosecution witness testified to the hearsay statements of the children. Notwithstanding the trial court's error, we are convinced on the basis of the entire trial record that that error alone did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.

We conclude, however, that the defendant's other claims raised in the court of appeals but not addressed by that court should be considered. If on remand of this case the court of appeals is of the view that the trial court committed reversible error, it should order a new trial. If the court is of a contrary view, the judgment of conviction should be affirmed. We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to consider and resolve the other claims raised by the defendant in his brief filed with that court.

---

7. The trial court also instructed the jurors that they were not bound by the testimony of an expert witness but were to weigh the testimony of an expert as that of any other witness and to determine what weight to give the expert testimony.