231 P.3d 36

The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Thomas Dean TILLERY, Defendant-Appellant.

No. 06CA1853.
Colorado Court of Appeals,
Div. IV.
Oct. 1, 2009.
Rehearing Denied Nov. 19, 2009.
231 P.3d 37        COPYRIGHT MATERIAL OMITTED
231 P.3d 38        COPYRIGHT MATERIAL OMITTED
231 P.3d 39        COPYRIGHT MATERIAL OMITTED
231 P.3d 40
 John W. Suthers, Attorney General, Christopher Y. Bosch, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.
Douglas K. Wilson, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.
Opinion by Judge WEBB.        Defendant, Thomas Dean Tillery, appeals the judgment of conviction entered on a jury verdict finding him guilty of five counts of sexual assault on a child (SAOC) as part of a pattern, section 18-3-405(1), (2)(d), C.R.S.2005; five counts of sexual assault on a child-position of trust (POT), section 18-3-405.3(1), (2)(a), C.R.S.2009; one count of SAOC with a second victim, section 18-3-405(1); and two counts of contributing to the delinquency of a minor, section 18-6-701, C.R.S.2009. We affirm the judgment of conviction.        Tillery also appeals the trial court's concurrent sentences of sixty years to life under the Colorado Sex Offender Lifetime Supervision Act, § 18-1.3-1001, C.R.S.2009, on each of the pattern and POT counts. We vacate these sentences and remand for resentencing in accordance with this opinion.        All of the pattern and POT counts were based on evidence that Tillery had sexually assaulted his twelve year old stepdaughter over a seven month period while she was living with him. The victim also testified that six years earlier, Tillery had sexually assaulted her while they were living in Bennett, Colorado, although this incident was not 231 P.3d 41
 charged. During trial, the prosecution introduced a recording of a pretextual phone call initiated by the victim's mother in which Tillery admitted to having had sexual contact with the victim.
I. Evidentiary Issues        “A trial court has substantial discretion in deciding the admissibility of evidence, and its ruling will not be disturbed absent an abuse of discretion.” 
People v. McGraw, 30 P.3d 835, 838 (Colo.App.2001). “An abuse of discretion occurs only if the trial court's evidentiary ruling is manifestly arbitrary, unreasonable, or unfair.” 
Id.
A. Admissibility of the Bennett Incident        Tillery first contends the trial court erred by admitting evidence of the Bennett incident without satisfying CRE 404(b) and section 16-10-301, C.R.S.2009. We disagree.        Before trial, Tillery moved to preclude uncharged conduct evidence under CRE 404(b), including the Bennett incident. The trial court agreed with the prosecutor's statement that the Bennett incident was admissible “in order to prove pattern at trial,” and added that evidence of the Bennett incident was “res gestae, not 404(b).” We perceive no error, although we decline to rely on res gestae. 
See 
People v. Eppens, 979 P.2d 14, 22 (Colo.1999) (appellate court can affirm the court's rulings on any basis supported by the record).        The former version of section 18-3-405(2)(d) (ch. 322, sec.8, § 18-3-405(2)(d), 2002 Colo. Sess. Laws 1582), under which Tillery was convicted, made SAOC a class three felony if:
The actor commits the offense as a part of a pattern of sexual abuse as described in subsection (1) of this section. No specific date or time must be alleged for the pattern of sexual abuse; except that the acts constituting the pattern of sexual abuse must have been committed within 10 years prior to or at any time after the offense charged in the information or indictment. The offense charged in the information or indictment shall constitute one of the incidents of sexual contact involving a child necessary to form a pattern of sexual abuse as defined in section 18-3-401(2.5).
Both then and now, a pattern of sexual abuse has been defined as “the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim.” Section 18-3-401(2.5), C.R.S.2009.        “To prove a pattern of abuse under ... [section] 18-3-405(2)(d), the prosecution must prove beyond a reasonable doubt that (1) the defendant committed an act charged under [section] 18-3-405(1), ... that constituted the predicate offense for [section] 18-3-405(2)(d); and (2) the other act or acts constituting the pattern of sexual abuse were committed within ten years prior to [or at any time after] the predicate offense.” 
People v. Kyle, 111 P.3d 491, 502 (Colo.App.2004).        Thus, evidence of other acts of sexual contact is not similar transaction evidence offered to prove scheme, plan, intent, or design. 
People v. Bowring, 902 P.2d 911, 916 (Colo.App.1995) (evidence of pattern acts not subject to CRE 404(b) procedural safeguards). “Rather, it is evidence that forms an integral part of the offense with which the defendant was charged, and no limiting instructions are required.” 
Id.        Further, section 16-10-301(5) provides that “[t]he procedural requirements of this section shall not apply when the other acts are presented to prove that the offense was committed as part of a pattern of sexual abuse under section 18-3-405(2)(d).”        Accordingly, because the Bennett incident occurred within ten years prior to the predicate offenses charged under section 18-3-405(1) and was admissible as evidence of a pattern of sexual assault against the same victim, we conclude that the trial court did not err.
B. Forensic Interviewer's Testimony        Tillery next contends the trial court erred by admitting testimony of a forensic interviewer that allegedly vouched for the victim and constituted expert testimony which did not comply with CRE 702. We reject both contentions.
231 P.3d 42        
 The victim told the forensic interviewer of sexual contact with Tillery. A recording of the interview was played during trial and the interviewer testified about it.
1. Improper Vouching        CRE 608(a)(1) does not permit a witness to opine that a child victim was telling the truth when the child reported a particular sexual assault by a defendant. 
See 
People v. Gaffney, 769 P.2d 1081, 1088 (Colo.1989).
[H]owever ... an opinion as to the credibility of the victim is admissible if that testimony relates to general characteristics only. It is proper, for instance, to elicit an opinion as to whether children, in general, have the sophistication to lie about having experienced a sexual assault.
People v. Gillispie, 767 P.2d 778, 780 (Colo.App.1988) (citation omitted).        Here, Tillery points to the following statements made by the interviewer during her recorded interview with the victim, which were admitted over his objection:
• An explanation of the rules of the interview-including that the victim had to tell the truth;
• Responding to the victim's answers as “weird” or as needing “more explanation”;
• Saying in response to the victim, “I have to tell you something, the answer does not make sense to me.”
But these statements do not express an opinion on the victim's truthfulness or sincerity. Tillery failed to object on the basis that the comments improperly coached the victim, and therefore we do not address that possibility.
2. Expert Testimony        Because the prosecution did not qualify the interviewer as an expert under CRE 702, abuse of discretion turns on whether admission of any opinions in her testimony was proper under CRE 701. 
See 
People v. Veren, 140 P.3d 131, 136 (Colo.App.2005).        CRE 701 makes lay opinions admissible if they are “(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.”        Such testimony is proper when it “ ‘results from a process of reasoning familiar in everyday life.’ ” 
Veren, 140 P.3d at 137 (quoting 
State v. Brown, 836 S.W.2d 530, 549 (Tenn.1992)). “[T]the critical inquiry is whether a witness's testimony is based upon ‘specialized knowledge.’ ” 
Veren, 140 P.3d at 137.        Here, Tillery argues that the following testimony was improper under CRE 701:
• The interviewer's qualifications and training;
• The protocols and interview techniques used by the interviewer;
• The interviewer's opinion that younger children are prone to suggestibility more so than older children.        The interviewer's qualifications, training, and interview protocols and techniques do not constitute opinion testimony. Certain basic information about a subject may fall within the scope of lay opinion testimony, even if more detailed discussion of the same area would require specialized knowledge. 
Veren, 140 P.3d at 139 (concluding that certain basic information about drugs may properly fall within the scope lay opinion testimony, although a police officer's testimony regarding the amount of pseudoephedrine needed to manufacture methamphetamine required specialized knowledge).        Further, unlike the specific training and specialized knowledge that qualifies a witness as an expert, here the interviewer's opinion about the suggestibility of younger children was based on her years of observing them, not on a “process of reasoning that can be mastered only by specialists in the field.” 
People v. Rincon, 140 P.3d 976, 983 (Colo.App.2005); 
see also 
Farley v. People, 746 P.2d 956, 958 (Colo.1987) (counselor employed by the Victim Services Unit of the police department properly testified as a lay witness that the victim's reactions were very 231 P.3d 43
 consistent with her being a rape victim); 
People v. Rogers, 800 P.2d 1327, 1330 (Colo.App.1990) (permitting a detective to testify under CRE 701 about the range of responses and demeanor demonstrated by child sexual assault victims).        Accordingly, we conclude that the trial court did not err by admitting the testimony of the forensic interviewer.
II. Trial Errors
A. Motion for Mistrial        Tillery next contends the trial court erred by denying his motion for a mistrial after the victim testified about a previously undisclosed sexual contact with him. We discern no abuse of discretion.        A mistrial is a drastic remedy warranted only when prejudice to the accused is so substantial that its effect on the jury cannot be remedied by any other means. Because the trial court is in a better position to evaluate any adverse effect of improper statements or testimony on a jury, it has considerable discretion to determine whether a mistrial is warranted. 
People v. James, 117 P.3d 91, 95 (Colo.App.2004). Hence, “its ruling will not be disturbed absent a clear showing of abuse of discretion and prejudice to the defendant.” 
People v. Ortega, 899 P.2d 236, 238 (Colo.App.1994). Factors relevant in considering whether a mistrial should be declared include the nature of the inadmissible evidence, the weight of the admissible evidence of guilt, and the value of a cautionary instruction. 
People v. Vigil, 718 P.2d 496, 505 (Colo.1986).        A jury is presumed to have followed a curative instruction to disregard improper testimony or statements. 
People v. McNeely, 68 P.3d 540, 542 (Colo.App.2002). Such an instruction is inadequate only when the improper testimony or statements are so prejudicial that, but for the exposure, the jury might not have found the defendant guilty. 
Id.        Here, during the prosecutor's direct examination, the victim testified as follows:
Q: Was there ever something that happened before you lived in that house?
A: Yes, when I was a little girl.
Q: How old were you?
A: I don't remember.
Q: Do you remember where you lived?
A: We were in an apartment. And there was one time when we were in the house up in Bennett.
....
Q: You mentioned also something about an apartment. When was that?
A: When I was a little girl when him and my mom got together.
Q: And what happened? Was that before or after the house in Bennett?
A: It was before.
Q: What happened then?        Tillery objected and moved for a mistrial, asserting both prejudice and nondisclosure. The trial court denied the motion. After conferring with counsel, it instructed the jury:
[T]he court has stricken that portion of the testimony of [the victim] as to an incident involving she and the defendant in an apartment.... You must not consider any testimony or evidence which the court has rejected. You must disregard this testimony or evidence.        Here, unlike the Bennett incident that was mentioned in the victim's taped interview, Tillery asserts, and the Attorney General does not deny, that he had lacked prior notice of the apartment incident. 
See 
Thomas v. People, 803 P.2d 144, 153 n. 19 (Colo.1990) (“[D]ue process requires that a defendant be advised of the charges against him so that he can prepare his defense.”).        Nevertheless, we discern no clear abuse of the trial court's discretion. The reference to the apartment incident was brief, unembellished, promptly suppressed by the trial court, and not repeated again before the jury. 
See 
People v. Shreck, 107 P.3d 1048, 1060 (Colo.App.2004) (denying motion for mistrial). The curative instruction was proper and Tillery does not point to anything in the record suggesting the jury disregarded it. 
See 
People v. Ellis, 30 P.3d 774, 778 (Colo.App.2001) (absent evidence to the contrary,
231 P.3d 44
 we must presume that such instruction cured any prejudice to defendant).        Tillery's argument that the instruction was prejudicial because it referred to “the incident” is waived by his active participation in its wording. Further, when asked by the trial court, “[a]re both sides comfortable if the court just refers to it as the incident,” Tillery did not object. 
See 
Valley v. People, 165 Colo. 555, 559-62, 441 P.2d 14, 16 (1968) (“failure of counsel to object to the clarifying comments of the trial court, coupled with the fact that counsel ... was a more or less active participant in this further instructing of the jury, amounts to a waiver”).        For the first time on appeal, Tillery asserts that the prosecutor's questions constituted misconduct. Because he did not raise this issue below, we review it only for plain error, and discern none. 
See 
People v. Constant, 645 P.2d 843, 847 (Colo.1982).        The prosecutor's “before you lived in that house” question did not indicate that he was aware of the undisclosed incident. 
See 
People v. Abbott, 690 P.2d 1263, 1269 (Colo.1984) (prosecutor could not have anticipated witness's unresponsive answer). Tillery also asserts that the “what happened then” question shows the prosecutor was attempting to elicit testimony regarding details of an incident distinct from the Bennett incident. However, because Tillery failed to raise this assertion below, the record does not include the prosecutor's explanation for that question, which on the existing record could have been merely attempting to clarify what the victim meant. Hence, we discern no plain error. 
See 
People v. O'Connell, 134 P.3d 460, 464 (Colo.App.2005) (plain error must be “so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection.”) (internal quotation omitted).        Accordingly, we conclude that the trial court did not err by denying Tillery's motion for a mistrial.
B. Prosecutorial Misconduct        Tillery next contends that during closing argument, the prosecutor improperly stated that he had “lied.” Although we disapprove of the prosecutor's statement, we discern no basis for reversal.        Because Tillery did not object, we review only for plain error. 
People v. Cevallos-Acosta, 140 P.3d 116, 122 (Colo.App.2005). To constitute plain error, prosecutorial misconduct must be “flagrant or glaringly or tremendously improper,” and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. 
People v. Salyer, 80 P.3d 831, 839 (Colo.App.2003). Prosecutorial misconduct in closing argument rarely constitutes plain error. 
People v. Weinreich, 98 P.3d 920, 924 (Colo.App.2004), 
aff'd, 119 P.3d 1073 (Colo.2005).        “[L]ack of an objection is a factor to be considered in examining the impact of a prosecutor's closing argument.... The lack of an objection may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging.” 
People v. Rodriguez, 794 P.2d 965, 972 (Colo.1990) (alteration in original).        Closing arguments are rarely scripted with precision. 
People v. McBride, 228 P.3d 216, 221 (Colo.App. 2009). And a prosecutor may “employ rhetorical devices” so long as the prosecutor “does not thereby induce the jury to determine guilt on the basis of passion or prejudice.” 
People v. Allee, 77 P.3d 831, 836 (Colo.App.2003).        Here, during his initial closing argument, the prosecutor stated:
[The victim] and [Tillery] both lied, but the difference for their lies are as dramatic as they can be. [The victim] tried to protect the stepdad she loved. [Tillery] lied to protect himself. [The victim's] unselfish love for her stepdad was strong enough to make her deny her own safety. His love for himself was strong enough to keep his twelve year old the victim drunk, addicted to cigarettes, and in his bed. [The victim's] lies kept her victimized. His lies allowed him to continue repeatedly satisfying his own criminal sexual desires in that bed.
231 P.3d 45
 Fortunately, the lies began to fade away and fall away to the light of the truth. And that really began when [the victim] told her mom and her mom told [Tillery], “she told me everything.” The lies began to fall away, but they didn't continue to fall away. They were resistant.        Tillery did not testify. Nevertheless, prosecutors may not argue that a defendant's out-of-court statements were lies. 
See 
People v. Trujillo, 624 P.2d 924, 925-26 (Colo.App.1980) (plain error where prosecutor characterized the defendant's written pretrial statement as “riddled with lies.”); 
People v. McBride, 228 P.3d at 221 (plain error where prosecutor “accused defendant of having ‘offered a whole rainbow of explanations' and thereby having ‘lied over and over,’ which ‘shows his guilt’.”).        While we agree that the references to Tillery having lied were improper, we conclude that these comments did not constitute plain error because of the context in which they were made. 
Domingo-Gomez v. People, 125 P.3d 1043, 1050 (Colo.2005) (“The prosecutor's use of the word ‘lied’ does not tip the scales towards an unjust conviction.”).        First, the improper comments made up a small part of the prosecution's closing argument and were not repeated during rebuttal. 
See 
Domingo-Gomez, 125 P.3d at 1053 (“Comments that were few in number, momentary in length, and were a very small part of a rather prosaic summation do not warrant reversal under the plain error standard.”).        Second, following the reference to Tillery's “lies,” the prosecutor went through the pretext phone call in detail, pointing to Tillery's increasingly inculpatory statements. The prosecutor then juxtaposed these admissions against Tillery's efforts to diminish his responsibility and pleas for sympathy. Thus, the argument was less an attack on Tillery's credibility than a rhetorical device to show his indifference to the damage he had done to the victim.        Moreover, the evidence of Tillery's guilt was overwhelming. In the pretext phone call, he admitted to having had sexual contact with the victim, which is an element of both sections 18-3-405(1) and 18-3-405.3(1). 
See 
People v. Alengi, 114 P.3d 11, 17 (Colo.App.2004) (“[I]n light of the overwhelming evidence of defendant's guilt, the prosecutor's remarks had little, if any, effect on the reliability of defendant's conviction.”), 
aff'd, 148 P.3d 154 (Colo.2006).        Accordingly, we conclude that they did not rise to the level of plain error. 
See 
People v. Knight, 167 P.3d 147, 157 (Colo.App.2006).
III. Unanimity Instruction        Tillery next contends he is entitled to a new trial because the jury may not have unanimously found that he committed the specific acts of sexual assault alleged to support counts 3-5 under section 18-3-405(1), (2)(d) and counts 8-10 under section 18-3-405.3(1), (2)(a). We disagree.        When the prosecution offers evidence of many transactions, any one of which would constitute the offense charged, to ensure jury unanimity the trial court must either:
(1) require the prosecution to elect the transaction on which it relies for conviction, or (2) if there is not evidence to differentiate between the acts and there is a reasonable likelihood that jurors may disagree on the act the defendant committed, instruct the jury that to convict it must unanimously agree that the defendant committed the same act or that the defendant committed all the acts included within the period charged.
People v. Gookins, 111 P.3d 525, 528 (Colo.App.2004). These actions assure that a conviction “does not result from some members of the jury finding the defendant guilty of one act, while others convict based on another act.” 
Gookins, 111 P.3d at 528. However, the defendant in a sexual assault case is not entitled to such an election before trial. 
People v. Doss, 782 P.2d 1198, 1201 (Colo.App.1989).        Here, the record shows that the prosecutor elected which offenses would support Counts 3-5 (pattern) and 8-10(POT). During closing argument, the prosecutor told the jury that Counts 1-2 (pattern) and 6-7(POT) were based on evidence of Tillery's sexual contact 231 P.3d 46
 with the victim on the garage floor and then again in the bedroom after she had returned home from a water park. The verdict forms so indicated.        The remaining sexual assault counts were based on the next three incidents that had occurred in the bedroom: (1) before a sleepover in late September; (2) after the sleepover; and (3) right before Halloween. In closing argument the prosecutor explained, and the verdict forms indicated, that Counts 3 and 8 were based on the “second incident of sexual contact in bedroom”; Counts 4 and 9 were based on the “third incident of sexual contact in bedroom”; and Counts 5 and 10 were based on the “fourth incident of sexual contact in bedroom.” The prosecutor then told the jury, “she talked about a whole lot more than that, but it's just those five times, the garage and the first four times in the bedroom.” Hence, the evidence supporting these counts “presented no rational basis for some jurors to predicate guilt on one act while other jurors based it on another.” 
Thomas v. People, 803 P.2d 144, 155 (Colo.1990).        Moreover, for Tillery's pattern convictions under section 18-3-405(1), (2)(d), the jury was instructed that to convict it must find he committed “all of the incidents of sexual contact described by the evidence,” or “unanimously agree that the same two or more incidents of sexual contact have been proven beyond a reasonable doubt.” This instruction complies with the safeguards required by 
Gookins. See also 
People v. Melillo, 25 P.3d 769, 779 n. 10 (Colo.2001) (approving of a similarly worded unanimity instruction).        Accordingly, we conclude that the jury unanimously found Tillery committed the specific acts of sexual assault alleged to support counts 3-5 under section 18-3-405(1), (2)(d) and counts 8-10 under section 18-3-405.3(1), (2)(a), and that the jury unanimously agreed on other acts of sexual contact, if any, on which it relied to support the pattern counts.
IV. Sentencing
A. Predicate Offense        Tillery next contends his pattern convictions must be reversed because the prosecution relied on the Bennett incident as a predicate offense of SAOC to enhance his sentence under section 18-3-405(2)(d). We disagree.        Because the Bennett incident was uncharged, it could not constitute a predicate offense under 18-3-405(2)(d). 
See 
People v. Gholston, 26 P.3d 1, 14 (Colo.App.2000) (“[O]nly a count charged under [section] 18-3-405(1)[can] serve as the predicate offense for [section] 18-3-405(2)(d).”). Nevertheless, based on the jury instructions and closing argument, we discern no ground for reversal.        Tillery was charged with and convicted of five SAOC counts under section 18-3-405(1). Each of these counts constituted a predicate offense for a pattern sentence enhancer under section 18-3-405(2)(d). 
See 
People v. Hoefer, 961 P.2d 563, 566 (Colo.App.1998).        The jury instructions did not identify the Bennett incident as a predicate offense for the pattern counts. Rather, the five SAOC counts were based on sexual assaults that had occurred when the victim was twelve years old, as discussed above.        During closing argument, the prosecutor told the jury that the Bennett incident, if found beyond a reasonable doubt, was only evidence of a pattern of abuse. Thus, the record does not support Tillery's contention that the jury improperly relied on the Bennett incident as the SAOC predicate for any of the pattern counts.        To the extent Tillery argues that without the Bennett incident the evidence was insufficient to prove pattern, we are not persuaded. The prosecutor introduced sufficient evidence to prove beyond a reasonable doubt that (1) Tillery committed the five sexual assaults charged under section 18-3-405(1), all of which constituted predicate offenses for section 18-3-405(2)(d); and (2) another act of sexual abuse within ten years prior to or at any time after these predicate offenses. 
See 
Gholston, 26 P.3d at 14; 
see also 
People v. Honeysette, 53 P.3d 714, 718 (Colo.App.2002) (a conviction of sexual assault on a child by one in a position of trust cannot constitute the predicate offense 231 P.3d 47
 § 18-3-405(2)(d), but is evidence of a “pattern of sexual abuse”).        Accordingly, we conclude that Tillery's pattern convictions do not require reversal because of the Bennett incident and that sufficient evidence supports the jury's verdict.
B. Unpreserved Double Jeopardy Error        Although Tillery failed to raise double jeopardy below, we review both his initial double jeopardy argument and his supplemental assertions concerning 
People v. Simon, 219 P.3d 789 (Colo.App.2009), which was announced after this case had been briefed, for plain error under Crim. P. 52(b).        The Double Jeopardy Clauses of both the United States and Colorado Constitutions prevent, among other things, multiple punishments for the same offense in a single trial. 
North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); 
Patton v. People, 35 P.3d 124, 128-29 (Colo.2001).        In 
People v. Cagle, 751 P.2d 614, 619 (Colo.1988), the court said, “[i]t is axiomatic that this court will not consider constitutional issues raised for the first time on appeal.” Our supreme court continues to cite 
Cagle, see, e.g., 
Hinojos-Mendoza v. People, 169 P.3d 662, 667 (Colo.2007), but it has not decided whether double jeopardy claims can be raised for the first time on appeal. This question has divided divisions of this court.        Some divisions, citing 
Cagle or its progeny but without further analysis, have declined to consider unpreserved double jeopardy claims. 
See, e.g., 
People v. Cooper, 205 P.3d 475, 478 (Colo.App.2008); 
People v. Novitskiy, 81 P.3d 1070, 1073 (Colo.App.2003); 
People v. Johnson, 74 P.3d 349, 356 (Colo.App.2002); 
People v. Williams, 33 P.3d 1187, 1190 (Colo.App.2001).        Other divisions, also without significant analysis, have reviewed such claims for plain error. 
See, e.g., 
People v. Flowers, 128 P.3d 285, 290 (Colo.App.2005); 
People v. Cruthers, 124 P.3d 887, 890 (Colo.App.2005); 
People v. Olson, 921 P.2d 51, 53 (Colo.App.1996).        Although the Supreme Court has not addressed the issue, the federal circuits to have done so recently adopt the plain error approach. 
See 
United States v. Lewis, 492 F.3d 1219, 1222 (11th Cir.2007) (collecting cases). We are persuaded to adopt this view for the following reasons:
• A broad reading of the admonition in 
Cagle would be difficult to reconcile with the principle that “plain error standards apply to constitutional errors challenged for the first time on appeal,” 
People v. Stevenson, 228 P.3d 161, 171 (Colo.App. 2009) (citing 
People v. Miller, 113 P.3d 743, 748-50 (Colo.2005)), and the innumerable cases doing so. 
See, e.g., 
People v. Harlan, 8 P.3d 448, 489 (Colo.2000).
• The absence of supreme court precedent addressing the 
Cagle admonition in the double jeopardy context of multiple punishments for the same offense is explainable because “this aspect of the constitutional limitation actually embodies a concern for the separation of governmental powers and manifests more as a rule of construction than a limitation on the authority of the legislature.” 
People v. Abiodun, 111 P.3d 462, 464 (Colo.2005). And in any event, because 
Simon was decided while this case was on appeal, addressing that issue, notwithstanding 
Cagle, would also further judicial economy. 
Hinojos-Mendoza, 169 P.3d at 667.
• Because correcting double jeopardy errors such as the ones alleged here would involve only resentencing, the “social costs of reversal and retrial,” such as “witnesses' memories fade, witnesses move away and victims hesitate to testify again,” are not implicated. 
People v. Sepulveda, 65 P.3d 1002, 1008 (Colo.2003).
• Although raising double jeopardy below would “conserve[ ] judicial resources by ensuring that trial judges will have an opportunity to correct any error,” 
People v. Smith, 121 P.3d 243, 253 (Colo.App.2005) (Webb, J., specially concurring), doing so would not “increase[ ] the likelihood that a sufficient record will exist for meaningful appellate review.” 
Id.; cf. 231 P.3d 48
 
Veren, 140 P.3d at 140 (unconstitutionality as applied should not be addressed for the first time on appeal because “it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional.”).
• Return of a verdict before the double jeopardy claim is ripe, as here, precludes the possibility that defense counsel would intentionally “withhold a meritorious objection, permit error to occur, and then, in the event of a conviction, raise the error for the first time on appeal,” in the hope of obtaining a retrial. 
Smith, 121 P.3d at 253 (citing authorities).
• Where the sentencing court makes a ruling based on double jeopardy, either party could appeal, and review would be de novo. 
See, e.g., 
People v. Stevenson, 228 P.3d 161, 168 (Colo.App. 2009). A defendant can also raise a double jeopardy sentencing argument under Crim. P. 35(c), 
People v. Collier, 151 P.3d 668, 672 (Colo.App.2006), and the postconviction court would rule on the same record we have before us now.        Nor do we have the same difficulty applying the plain error test to sentencing as the special concurrence suggests. The criteria of error that is plain and that prejudiced substantial rights, 
see, e.g., 
People v. O'Connell, 134 P.3d 460, 463 (Colo.App.2005), can be used to evaluate an alleged sentencing error. The remaining criterion, whether the error “cast[s] serious doubt on the reliability of the judgment [of conviction],” 
see, e.g., 
People v. Sepulveda, 65 P.3d 1002, 1006 (Colo.2003), cannot be applied literally to sentencing because the defendant has already been convicted.        But “no definition [of plain error] will fit every case.” 
People v. Barker, 180 Colo. 28, 32, 501 P.2d 1041, 1042 (1972); 
People v. Cook, 197 P.3d 269, 276 (Colo.App.2008). The underlying principle, “a reasonable possibility that the error contributed to [the] conviction,” 
see, e.g., 
Kaufman v. People, 202 P.3d 542, 549 (Colo.2009), can be restated as looking for a reasonable possibility that the error contributed to the sentence. In the double jeopardy context, the answer would invariably be “yes.” This would not necessarily be so with other sentencing errors. 
See, e.g., 
People v. Gretz, 973 P.2d 110, 111 (Colo.App.1998) (sentencing without ordering PSIA).
1. Imposing Separate Sentences for Identical Criminal Acts        We reject Tillery's contention that the trial court violated his rights under the Double Jeopardy Clauses of the United States and Colorado Constitutions by imposing separate sentences for his convictions under section 18-3-405(1), (2)(d) and section 18-3-405.3(1), (2)(a), because the convictions were based on identical criminal acts.        In the context of multiple punishments for the same offense, double jeopardy is violated only if violations of the same statutory offense are not factually distinct from one another. 
See 
People v. Abiodun, 111 P.3d 462, 464-65 (Colo.2005); 
see also § 18-1-408(1)(a), C.R.S.2009 (“[w]hen any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense ... [except when] ... [o]ne offense is included in the other, as defined in subsection (5) of this section....”).        Sexual assault on a child is not a lesser included offense of sexual assault on a child by one in a position of trust. 
People v. Leske, 957 P.2d 1030, 1036 (Colo.1998). In 
People v. Valdez, 874 P.2d 415, 418 (Colo.App.1993), the division explained:
To be convicted of sexual assault on a child as part of a pattern of sexual abuse, the prosecution does not have to prove that the defendant was in a position of trust, but must prove the commission of the sexual contact charged and at least one other incident of sexual contact on the same child within ten years of the offense charged. In contrast, to be convicted of sexual assault on a child by one in a position of trust, the prosecution does not have to prove a pattern of sexual contact, but must prove that the actor was in a position of trust with respect to the victim. Hence, neither of these offenses requires proof of 231 P.3d 49
 the same or less than all of the facts required to establish the other.
(Citations omitted.)        Tillery's reliance on 
Woellhaf v. People, 105 P.3d 209 (Colo.2005), is misplaced. Although the supreme court concluded that neither section 18-3-405 nor 18-3-405.3 “authorizes multiple punishments for each discrete act of sexual contact that occurs within a single incident of sexual assault on a child,” it also noted that the prosecution may pursue multiple convictions if the underlying evidence supports factually distinct offenses. 105 P.3d at 216, 218. Here, the evidence at trial clearly portrayed at least five distinct incidents of sexual contact that formed the basis for Tillery's convictions under both sections 18-3-405(1) and 18-3-405.3(1).        Accordingly, we conclude that the trial court did not err by imposing separate sentences for his convictions under sections 18-3-405(1), (2)(d) and 18-3-405.3(1), (2)(a).
2. 
People v. Simon        In supplemental briefs ordered by the division, the parties addressed 
People v. Simon, 219 P.3d 789 (Colo.App.2009). Although 
Simon dealt with the pattern enhancer under the POT statute, now section 18-3-405.3(2)(b), that language is identical to the SAOC pattern enhancer, now section 18-3-405(2)(d), under which Tillery was sentenced.        According to Tillery, “the judgments of conviction and sentences for all but one of the pattern convictions must be reversed.” While urging us to adopt the dissent in 
Simon, the Attorney General concedes that under the majority opinion, Tillery would remain convicted of five POT counts, but could stand convicted of only one SAOC pattern count. For the following reasons, we follow the dissent and conclude that because Tillery was properly convicted of five separate SAOC offenses, the sentence for each such offense may be enhanced based on evidence of pattern acts. 
See 
Am. Family Mut. Ins. Co. v. Murakami, 169 P.3d 192, 193 (Colo.App.2007) (one division of court of appeals not bound by the decision of another division).        First, under the majority's holding, an offender who repeatedly assaulted the same child would be subject to only one enhanced sentence, regardless of the number of assaults. This interpretation would frustrate the General Assembly's intent, as shown by the plain language, to treat pattern abuse as “of greater social consequence and which merits greater punishment.” 
People v. Longoria, 862 P.2d 266, 270-71 (Colo.1993); 
see, e.g., 
People v. District Court, 713 P.2d 918, 921 (Colo.1986) (court's duty to give effect to legislative intent).        Second, the substantive offense is SAOC. After describing the elements of SAOC, section 18-3-405(2) provides “it is a class 3 felony if....” The antecedent of “it” is SAOC. And the pattern sentence enhancer in section 18-3-405(2)(d) is predicated on “the offense,” which likewise refers back to SAOC. Neither the pattern definition in section 18-3-401(2.5), which is entitled “Definitions,” nor any other provision of that section, purports to establish a substantive offense. 
See 
CLPF-Parkridge One, L.P. v. Harwell Investments, Inc., 105 P.3d 658, 661 (Colo.2005) (court may consider statute's title).        Third, the sentence enhancer contemplates multiple acts (“the acts constituting the pattern of sexual abuse”), one of which shall be “[t]he offense charged in the information or indictment.” Especially in a case involving multiple SAOC charges, this language is contrary to the majority's unitary approach of looking at “the overall course of conduct,” 
Simon, 219 P.3d at 791-92, in which all pattern acts are lumped together to support but one enhanced sentence.        Fourth, under 
Woellhaf, 105 P.3d at 218-19, multiple sexual contacts can constitute different offenses if they occur in different locations or are separated by intervening events.        As applied to the particular facts here, Tillery was convicted of five SAOC offenses and five POT offenses. The pattern instruction required that the incidents of sexual contact be “separated by time or intervening events.” Further, the jury was instructed that “[e]ach count charges a separate and distinct offense ... and the evidence should 231 P.3d 50
 be considered separately, uninfluenced by your decision as to any other count.” Thus, as explained above, the POT convictions, although not evidence of the predicate act, constituted evidence of pattern of sexual abuse for each of the SAOC convictions. 
Honeysette, 53 P.3d at 718.        Therefore, we discern no double jeopardy violation in Tillery's five enhanced sentences on the SAOC counts.
C. Lower Term of Tillery's Sentences        Tillery next contends the trial court erred by imposing a lower term of sixty years for his indeterminate life sentences on each of the pattern and POT counts. We agree.        Statutory interpretation is a question of law that we review de novo. 
Klinger v. Adams County Sch. Dist. No. 50, 130 P.3d 1027, 1031 (Colo.2006).        We must adopt the statutory construction that “best effectuates the intent of the General Assembly and the purposes of the legislative scheme.” 
State v. Nieto, 993 P.2d 493, 501 (Colo.2000). Where the language is clear, we do not look beyond the plain meaning of the words or resort to other rules of statutory construction. 
Slack v. Farmers Ins. Exch., 5 P.3d 280, 284 (Colo.2000). But if the statute is reasonably susceptible to multiple interpretations, it is ambiguous, and we apply principles of statutory interpretation. 
Williams v. Kunau, 147 P.3d 33, 36 (Colo.2006).        To reasonably effectuate the legislative intent, a statute should be construed as a whole, giving consistent, harmonious, and sensible effect to all of its parts. 
People v. Dist. Court, 713 P.2d 918, 921 (Colo.1986). A court may consider the legislative history and legislative declaration or purpose. § 2-4-203(1)(c), (g), C.R.S.2009.
1. 
Vensor v. People        Tillery argues, the Attorney General concedes, and we agree, that the trial court's lower term of sixty years for his indeterminate life sentences cannot be reconciled with 
Vensor v. People, 151 P.3d 1274, 1279 (Colo.2007), decided after Tillery was sentenced.        In 
Vensor, the supreme court concluded:
[T]he ambiguous language of section 18-1.3-1004(1)(a) must be construed to require an indeterminate sentence for the class two, three, and four felony sex offenses to which it applies, consisting of an upper term of the sex offender's natural life and a lower term of a definite number of years, not less than the minimum 
nor more than twice the maximum of the presumptive range authorized for the class of felony of which the defendant stands convicted.
(Emphasis added.) The court's rationale would apply equally to section 18-1.3-1004(1)(b), under which Tillery was sentenced. 
See 
People v. Villa, ---P.3d ----, ----, 2009 WL 3128745 (Colo.App. No. 06CA1857, Oct. 1, 2009) (applying 
Vensor to the Colorado Sex Offender Lifetime Supervision Act of 1988, § 18-1.3-1004).        The presumptive range for class three felonies specified in section 18-1.3-401(1)(a)(V)(A) is four to twelve years, plus five years of mandatory parole. Tillery concedes that the trial court was required to sentence Counts 1-5 and 7 as crimes of violence under section 18-1.3-1004(1)(b). But as we conclude in the following section, this range cannot be enhanced by section 18-1.3-401(10).        Thus, on resentencing the lower term of Tillery's sentences must not be less than the minimum:
• For Counts 1-5 and 7 under section 18-1.3-1004(1)(b), “the midpoint of the presumptive range”: eight years; and
• For Counts 6 and 8-10 under section 18-1.3-1004(1)(a), “the minimum of the presumptive range”: four years.
For Counts 1-10, the lower term of Tillery's sentences must not be more than “twice the maximum of the presumptive range authorized for the class of felony of which the defendant stands convicted”: twenty-four years.        Accordingly, we conclude that Tillery's sentences exceeded what is authorized by law and must be vacated. On remand, the trial court shall sentence Tillery within these ranges. We express no opinion whether, on 231 P.3d 51
 remand, the trial court can impose consecutive rather than concurrent sentences to achieve its original sentencing objectives.
2. Crime of Violence Enhancement        Tillery next argues that on remand the trial court cannot apply section 18-1.3-401(10) to increase the presumptive range in calculating the lower term of the indeterminate life sentence on his crime of violence convictions (Counts 1-5 and 7). Again, we agree.
a. Plain Language        We first examine the plain language of the relevant statutes to determine whether section 18-1.3-401(10) applies to crimes of violence that are sexual offenses, and conclude that taken together, these statutes are unclear.        Under section 18-1.3-401(10)(a):
The general assembly hereby finds that certain crimes which are 
listed in paragraph (b) of this subsection (10) present an extraordinary risk of harm to society and therefore, in the interest of public safety, for such crimes which constitute class 3 felonies, the maximum sentence in the presumptive range shall be increased by four years ....
(Emphasis added.) Section 18-1.3-401(10)(b)(XII) includes “[a]ny crime of violence, as defined in section 18-1.3-406.”        Section 18-1.3-406(2)(b)(I) defines crime of violence in part as “any unlawful sexual offense in which the defendant caused bodily injury to the victim or in which the defendant used threat, intimidation, or force against the victim.” From this language, the Attorney General asserts that section 18-1.3-401(10) applies to crimes of violence which are sexual offenses.        However, subsections (1)(a) and (1)(b) of 18-1.3-406 differentiate between crimes of violence that involve sexual offenses and those that do not. Under section 18-1.3-406(1)(a), any person convicted of a crime of violence that is not a sexual offense shall receive a sentence “of at least the midpoint in, but not more than twice the maximum of, the presumptive range provided for such offense in section 18-1.3-401(1)(a), 
as modified for an extraordinary risk crime pursuant to section 18-1.3-401(10) ....” (Emphasis added.) In contrast, section 18-1.3-406(1)(b), which applies to sexual offenses, does not cross-reference section 18-1.3-401(10):
Notwithstanding the provisions of paragraph (a) of this subsection (1), any person convicted of a sex offense, as defined in section 18-1.3-1003(5), committed on or after November 1, 1998, 
that constitutes a crime of violence shall be sentenced to the department of corrections for an indeterminate term of incarceration of at least the midpoint in the presumptive range specified in section 18-1.3-401(1)(a)(V)(A) up to a maximum of the person's natural life, as provided in section 18-1.3-1004(1).
(Emphasis added.)        Reading these statutes as a whole, we cannot determine if the legislature intended to apply section 18-1.3-401(10) to crimes of violence that are sexual offenses. Therefore, we turn to the legislative intent behind section 18-1.3-401(10).
b. Legislative History of 2004 Amendments To Section 18-1.3-401(10)        In 2004, the General Assembly passed House Bill 1388, which repealed section 18-1.3-401(10)(c). That section provided:
With respect to the offenses specified in subparagraphs (I) to (VIII) of paragraph (b) of this subsection (10) and sexual offenses that constitute crimes of violence, the provisions of this subsection (10) apply only to offenses committed prior to November 1, 1998.
HB 1388 also eliminated all references to sexual offenses in section 18-1.3-401(10)(b), which had included both the SAOC and POT offenses at issue here. Additionally, HB 1388 added to section 18-1.3-406(1)(a) the reference “as modified for an extraordinary risk crime pursuant to section 18-1.3-401(10).”        The sponsor for HB 1388 provided two explanations for these amendments:
It removes from the list of extraordinary risk crimes all sexual offenses which were 231 P.3d 52
 described as not constituting extraordinary risk crimes [in the 1998 amendments to the sentencing statute]. These changes were part of the implementation of the indeterminate sentencing for sexual assaults and the bill clears up the confusion about how these provisions are applied.
It puts a reference of extraordinary risk sentencing provision into each statute that it refers to ... so when it's applicable that will be identified not just in one place but throughout the statute.[1]
Then Denver District Attorney Bill Ritter testified:
With regard to sexual offenses this legislative body changed the scheme on ... sexual offender sentencing so that most sexual offenses that are felonies carry with them an indeterminate sentence of the minimum sentence the judge sets and up to your life in prison. Because there is that outward end of life in prison then they're no longer required to be sentenced as extraordinary risk crimes ... it in effect means nothing to call them extraordinary risk crimes because the upper end is life in prison.        We conclude that this legislative history clearly indicates an intent not to apply section 18-1.3-401(10) to crimes of violence that are sexual offenses. Because “[a] statute should not be construed in a manner which defeats the obvious legislative intent,” 
Tacorante v. People, 624 P.2d 1324, 1330 (Colo.1981), we further conclude that on remand the trial court shall not enhance Tillery's crime of violence convictions under section 18-1.3-401(10).
V. Remaining Issues        Because Tillery argues for the first time on appeal that Colorado's Sex Offender Lifetime Supervision Act is facially unconstitutional, we decline to address that argument. Unlike his double jeopardy argument, this unpreserved facial challenge is barred. 
People v. Lesney, 855 P.2d 1364, 1366 (Colo.1993); 
Rickstrew v. People, 822 P.2d 505 (Colo.1991).        We reject Tillery's contention of cumulative error. The only errors we have found were the prosecutor's remarks during closing, which did not constitute plain error, and the error related to sentencing, which will be corrected on remand. Further, the sentencing error did not affect Tillery's right to a fair trial. 
See 
People v. Welsh, 176 P.3d 781, 791 (Colo.App.2007).        The judgment is affirmed. Tillery's sentence is vacated, and the case is remanded to the trial court for resentencing consistent with this opinion.
Judge ROMÁN concurs.
Judge BERNARD specially concurs.
Judge BERNARD specially concurring.
I. Introduction        “There would seem to be no error to which plain error review would not apply....” 3B Charles Alan Wright, Nancy J. King & Susan R. Klein, 
Federal Practice and Procedure § 856, at 511 (3d ed.2004). This quotation represents the view of eminent commentators who were analyzing Fed.R.Crim.P. 52(b). Because Colorado's counterpart, Crim. P. 52(b), is identical, 
see 
People v. O'Connell, 134 P.3d 460, 464 (Colo.App.2005), my colleagues in the majority clearly have a reasoned and principled basis for relying on federal authority, such as 
United States v. Lewis, 492 F.3d 1219, 1222 (11th Cir.2007), to reach the conclusion that we should review two unpreserved errors in this case.        However, I am deeply troubled by three classes of questions that I respectfully suggest are inherently raised by the majority's analysis. First, there are doctrinal issues. Are constitutional errors that occur in sentencing, which are unconnected to the propriety of a plea or verdict of guilt, trial errors? If they are not trial errors, are they subject to plain error analysis? If they are subject to plain error analysis, are the kinds of errors that are discussed here subject to automatic
231 P.3d 53
 reversal if found to exist? If so, are they more akin to structural errors, which are not amenable to plain error analysis?        Second, because I believe that Colorado has, historically, approached plain error analysis somewhat differently than the federal courts, is plain error review inapposite here because the unpreserved errors at issue are of the kind that we do not review for plain error?        Third, what are the consequences of expanding plain error review in these circumstances? Are the plain error standards employed in Colorado different from those employed in federal cases? What effect will the expansion of plain error review have on federal habeas corpus review of Colorado convictions? Will the expansion of plain error review increase the number of cases reviewed for plain error, and what effect will the expansion of review have on the principle that trials and sentencing hearings, not appeals, are the “main event” in the criminal justice process?        I wish to make plain that this is my only divergence from the majority's analysis in this case. I concur with the result and with the rationale of the rest of the opinion. My sole purpose in writing separately is to express my respectful disagreement with the majority's decision in section IV to analyze two unpreserved errors.
II. Trial Errors, Structural Errors, and the Standard of Review        The general rule is that a party must raise a contemporaneous objection before an error will be considered on appellate review. 
People v. Wilson, 838 P.2d 284, 289 (Colo.1992). Crim. P. 52(b) modifies this general rule by allowing appellate courts to address particularly damaging errors. 
Id. The rule states that “[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.”        Constitutional errors that occur during a criminal case fall into two classifications: trial errors and structural errors. Depending upon whether a timely objection was offered, trial errors are subjected to either harmless error or plain error analysis. 
Hodges v. People, 158 P.3d 922, 927 (Colo.2007) (plain error analysis is used for trial errors); 
Griego v. People, 19 P.3d 1, 7 (Colo.2001). Once identified, structural errors, which are rare, are not amenable to harmless or plain error review. Rather, because they are intimately related to the fundamental framework of a trial, structural errors require that a conviction be reversed. 
Hodges, 158 P.3d at 927; 
Blecha v. People, 962 P.2d 931, 942 (Colo.1998).        Trial errors are those that occur “during the presentation of the case to the jury, and ... may therefore be quantitatively assessed in the context of other evidence.” 
Blecha, 962 P.2d at 942 (quoting 
Arizona v. Fulminante, 499 U.S. 279, 307-08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). When assessing a preserved constitutional trial error for harmlessness, we ask whether “the guilty verdict actually rendered in this trial was surely unattributable to the error.” 
Blecha, 962 P.2d at 942 (quoting 
Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). When determining whether an unpreserved constitutional error was plain, the question we ask, as indicated above, involves evaluating whether the error undermined the trial's fundamental fairness to the point that we seriously doubt the reliability of the conviction. 
People v. Miller, 113 P.3d 743, 750 (Colo.2005).        It is beyond cavil that, with the exception of death penalty cases, the task of sentencing falls to the trial court after guilt has been determined by either plea or trial. 
See generally §§ 16-11-102, 301, 18-1.3-101 to -1012, C.R.S.2009; Crim. P. 32. Because many sentencing errors have no relationship to the presentation of the case to the jury, the trial's fundamental fairness, or the relationship of the guilty verdict to the sentencing error, the foregoing authority prompts me to raise the question whether either harmless error or plain error review applies to sentencing proceedings in which such sentencing errors allegedly occur. In other words, are such sentencing errors trial errors?        It may be argued that this question is immaterial because Crim. P. 52(b) is so broad 231 P.3d 54
 that trial error is merely a subset of the possible errors that can be noticed under the rule. This conclusion has not yet been reached by our supreme court. Getting to that point would, I suggest, face some challenges in light of the court's consistent statement that plain error applies to trial errors. 
E.g., 
Hodges, 158 P.3d at 927.        However, even assuming that trial error is merely a subset of the error that can be reached under Crim. P. 52(b), we are, I respectfully submit, still left without a standard of review for assessing sentencing errors that do not involve the propriety of the guilty verdict. Harmless error is inapposite because, for such errors, we are unconcerned with the jury verdict. Plain error does not seem to apply because we have no interest in the trial's fundamental fairness.        My research indicates that neither the United States Supreme Court nor our supreme court has directly confronted this issue. However, I would respectfully submit that 
Medina v. People, 163 P.3d 1136, 1141 (Colo.2007), comes the closest to discussing the dichotomy I analyze here. On one hand, it provides aid and comfort to the argument that trial errors include sentencing errors because it states, in dicta, that trial error includes constitutional error that occurs “at both trial and sentencing.” 
Id. at 1141. This statement was made based on a citation to a federal case, 
United States v. Stevens, 223 F.3d 239, 244 (3d Cir.2000), which made the identical statement, citing, in turn, to 
Fulminante. In 
Fulminante, the error in sentencing was inextricably interwoven with an error that occurred at trial.        On the other hand, 
Medina provides support for my position, too, because it states that the basis for deciding whether to apply harmless or structural error depends upon “the effect the error had on the guilty verdict in the case.” 
Medina, 163 P.3d at 1141. Because the trial court there entered a conviction different from the one returned by the jury, the error was structural, but because the error was “confined to the sentencing proceedings [it did] not affect the jury's guilty verdict.” 
Id. at 1141-42. I therefore contend that, if the basis for deciding whether to employ harmless error or structural error depends upon the error's effect on the guilty verdict, then, by a parity of reasoning, the basis for deciding whether to use plain error likewise depends upon the effect of the error on the guilty verdict.        I also recognize that other divisions of this court have assumed that plain error review applies to sentencing proceedings, but have not engaged in an analysis of the questions I raise here. 
See, e.g., 
People v. Banark, 155 P.3d 609, 611 (Colo.App.2007); 
People v. Elie, 148 P.3d 359, 366 (Colo.App.2006). However, because many of these cases, including 
Banark and 
Elie, involve claims based on error arising from 
Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and 
Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), I contend that these claims are inseparably tied to an error that occurred at trial. 
See 
United States v. Vazquez, 271 F.3d 93, 101-02 (3d Cir.2001) (
Apprendi error consists of a trial error-“failing to submit an element of the offense to the jury”-and a sentencing error-“imposing a sentence beyond the prescribed statutory maximum”).        Even assuming, for purposes of argument, that I found sufficient precedent to extend plain error review to sentencing errors unconnected to the propriety of the guilty verdict, I would remain stymied in this case. It appears to me that, once an appellate court concludes that one of the unpreserved errors the majority analyzes in section IV has occurred, the remedy is automatic. 
See § 18-1-408(1)(a), C.R.S.2009 (a defendant may not be convicted of more than one offense if “one offense is included in the other”); 
People v. Simon, 219 P.3d 789, 793 (Colo.App.2009) (consecutive sentences vacated and case remanded for resentencing); 
People v. Mintz, 165 P.3d 829, 835-36 (Colo.App.2007) (because court could not determine from an analysis of the evidence and the counts whether there was more than one offense, division vacated sentence, and remanded for resentencing based on merging of convictions); 
People v. Delgado-Elizarras, 131 P.3d 1110, 1113 (Colo.App.2005) (because conviction of a greater offense precludes conviction of a lesser offense based on the same 231 P.3d 55
 conduct, division vacated conviction for lesser offense).        If such errors, once identified, require an automatic remedy, the question must be raised whether the proper standard of review for them is structural error, not plain error. Although I am not prepared to conclude now, or necessarily in the future, that the errors at issue here are structural, they seem to share with structural errors the attribute of an automatic remedy. If so, then plain error analysis is inapposite. 
See 
Griego, 19 P.3d at 7 (structural errors are not amenable to plain error review); 
Bogdanov v. People, 941 P.2d 247, 252-53 (Colo.1997) (“Structural errors are not amenable to either a harmless error or a plain error analysis because such errors affect ‘the framework within which the trial proceeds,’ and are not errors in the trial process itself.” (quoting 
Fulminante, 499 U.S. at 310, 111 S.Ct. 1246)), 
overruled on other grounds by 
Griego, 19 P.3d at 7-8; 
People v. Jimenez, 217 P.3d 841, 868 (Colo.App.2008) (“If an error is structural, it is not susceptible of harmless error or plain error review.” (citing 
People v. Dunlap, 975 P.2d 723, 736-37 (Colo.1999), and 
Bogdanov)); 
State v. Cruz, 122 P.3d 543, 549 (Utah 2005) (because they affect the very framework of the trial, structural errors are not subject to plain error analysis); 
but see 
Johnson v. United States, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (indicating that structural errors are subject to plain error review when the error does not “seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings” (quoting 
United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)); 
United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 48 n. 5 (1st Cir.2004) (plain error analysis applies to structural errors).        There is no need to decide whether the error is obvious or substantial; whether the trial's fundamental fairness was undermined; or whether the undermining was so significant that we doubt the conviction's reliability. We simply impose the remedy.
III. Colorado's History        In 
People v. Cagle, 751 P.2d 614, 619 (Colo.1988), our supreme court stated that “[i]t is axiomatic that this court will not consider constitutional issues raised for the first time on appeal.” That statement was made in the course of analyzing whether a defendant had preserved for appeal an argument that a statute was unconstitutional. Thus, 
Cagle is, at the very least, an expression of the unexceptional and well-established idea that the constitutionality of statutes will not be addressed for the first time on appeal. 
See 
People v. Lesney, 855 P.2d 1364, 1366 (Colo.1993). This includes allegations that statutes are unconstitutional as applied. 
People v. Veren, 140 P.3d 131, 140 (Colo.App.2005). Therefore, it is my belief that plain error review in Colorado does not encompass unpreserved constitutional attacks on statutes.        Further, the supreme court has cited 
Cagle as a basis for concluding that a defendant “may only raise the improper denial of his constitutional right to a speedy trial on appeal if he raised it first in the trial court.” 
People v. McMurtry, 122 P.3d 237, 241 (Colo.2005); 
accord 
People v. Scialabba, 55 P.3d 207, 209-10 (Colo.App.2002). In addition to the cases cited by the majority in which divisions of this court have relied upon 
Cagle to conclude that double jeopardy claims should not be considered for the first time on appeal, other divisions have cited 
Cagle as the basis for declining to review unpreserved allegations that:
• The defendant's due process rights were violated when he was denied an evidentiary concerning his termination from a community corrections facility. 
People v. Kitsmiller, 74 P.3d 376, 378 (Colo.App.2002);
• The defendant should be given a remand for an extended proportionality review. 
People v. Collie, 995 P.2d 765, 775 (Colo.App.1999); and
• The Colorado Constitution provides broader protection in a particular area than the Fourth Amendment. 
People v. Oynes, 920 P.2d 880, 883 (Colo.App.1996).        It is, therefore, clear to me that, in Colorado at least, there are some unpreserved constitutional errors to which plain error review does not apply. Thus, relying on 
Lewis, a federal case that appears to reflect the 231 P.3d 56
 broader proposition that “[t]here would seem to be no error to which plain error review would not apply,” would not be consistent with Colorado's approach.        Further, the double jeopardy issues the majority analyzes here are substantially the same as unpreserved unconstitutional-as-applied arguments another division refused to consider on direct appeal, based on a full trial record. 
People v. Cooper, 205 P.3d 475, 477-78 (Colo.App.2008). As 
Veren points out, “it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied.” 140 P.3d at 140. I can see no principled reason for requiring a trial court to make a factual record to demonstrate to us why a statute has been unconstitutionally applied, but obviating that requirement when the issue is, as here, whether a defendant's sentence violates double jeopardy principles.
IV. Consequences of Expanding Plain Error Review
A. Unintended Consequences
1. Definition of Plain Error        The plain error review conducted by federal courts, such as in 
Lewis, may be palpably different from the plain error review standard that Colorado employs. In Colorado, to be plain error, the error must be obvious and substantial. We ask whether the error “so undermined the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction.” 
Miller, 113 P.3d at 750 (quoting 
People v. Sepulveda, 65 P.3d 1002, 1006 (Colo.2003)).        The federal standard is, at least on its face, different. It has four parts, as explained in 
United States v. Olano, 507 U.S. 725, 732-37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). First, was there error? Second, was the error plain? Third, did the error affect substantial rights? Fourth, because review under Fed.R.Crim.P. 52(b) is permissive, not mandatory, the United States Supreme Court has stated that a plain error should only be corrected when it “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” 
Id. at 736, 113 S.Ct. 1770 (quoting 
Atkinson, 297 U.S. at 160, 56 S.Ct. 391). The sorts of errors that justify relief in the fourth step include, but are not limited to, errors that result in a miscarriage of justice, meaning that the errors led to the conviction of a defendant who is actually innocent. 
Olano, 507 U.S. at 736, 113 S.Ct. 1770.        The fourth step is critical in the federal system. Even a plain error affecting a substantial right will not be corrected in the federal system unless the reviewing court determines, in the exercise of its discretion, that the fourth step has been met, “for otherwise the discretion afforded by [Fed.R.Crim.P. 52(b) ] would be illusory.” 
Olano, 507 U.S. at 737, 113 S.Ct. 1770. As a result, some federal courts have found that plain error exists, but have decided not to correct it. 
See, e.g., 
United States v. Johnson, 219 F.3d 349, 354 (4th Cir.2000).        It is unclear whether Colorado's formulation of the plain error test, as described in 
Miller, incorporates the fourth component of the federal test. On one hand, one commentator has suggested that Colorado's test folds the third and fourth parts of the 
Olano formulation together. 
See John D. Seidel, 
Standards of Appellate Review in State Versus Federal Courts, 35 Colo. Law. 43, 51 (Apr.2006).        On the other hand, I cannot find any case in which our supreme court has discussed the discretionary aspect of 
Olano's fourth step or whether Crim. P. 52(b) contains a discretionary component that would be applied in the manner described in 
Olano.        The discretionary aspect of the fourth step is important. For example, the United States Supreme Court has employed it to conclude that it need not resolve whether the error affected substantial rights because, even assuming that a defendant's substantial rights were affected, he or she would be denied relief because the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. 
United States v. Cotton, 535 U.S. 625, 632-33, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); 
Johnson, 520 U.S. at 469, 117 S.Ct. 1544. I know of no Colorado Supreme Court case that has taken this approach.
231 P.3d 57        
 If we are going to expand the scope of our plain error review based on federal authority, I wonder whether we are also importing the federal courts' view of the fourth step of plain error review. This concern is not idle because at least one federal court used the fourth step to resolve an unpreserved double jeopardy claim. In 
United States v. Danson, 115 Fed.Appx. 486, 488 (2d Cir.2004), a case involving an unpreserved double jeopardy argument that the indictment was multiplicitous because it charged the same crime in different counts, the court resolved this issue by applying the fourth 
Olano step. The court concluded that, “[b]ecause erroneous multiplicity, if any, in the indictment did not affect [the defendant's] term of imprisonment, any error did not seriously affect the fairness of the proceedings below.” 115 Fed.Appx. at 488.        Interpreting our plain error standard congruently with the federal four-step approach could be beneficial. First, the four-step analysis would allow Colorado courts to apply helpful and persuasive federal authority. Second, the use of the four-step analysis could lessen some of my concerns about the expansion of plain error review because the four-step test allows reviewing courts to apply a discretionary brake on the review of unpreserved errors that do not threaten the integrity, fairness, or public reputation of our judicial system. This brake would conserve limited judicial resources, much in the manner that the use of 
Cagle conserves them.        However, because of the apparent differences between our plain error standard and its federal counterpart, federal four-step authority is not necessarily helpful or persuasive. Further, a decision employing the discretionary fourth step to decline to review an issue may be reversed because our supreme court determines that the fourth step does not exist in Colorado. Therefore, unless and until our supreme court informs us that Colorado's plain error standard is congruent with the federal four-step approach, I respectfully suggest that using federal cases to expand the types of errors we review for plain error risks muddying, rather than clarifying, our plain error jurisprudence.
2. Habeas Corpus Review        The Tenth Circuit Court of Appeals has stated that a state court's analysis of a federal issue under the plain error standard does not act as a procedural bar to federal habeas corpus review. 
See 
Cargle v. Mullin, 317 F.3d 1196, 1206 (10th Cir.2003). However,
a state court could deny relief for what it recognizes or assumes to be federal error, because of the petitioner's failure to satisfy some independent state law predicate. In such a case, that non-merits predicate would constitute an independent state ground for decision which would warrant application of procedural-bar principles on federal habeas.
Id.        By extending plain error review to the sorts of errors in this case, we risk eliminating a procedural bar that might be available to prevent federal habeas review of them. This is so because, without plain error review, the failure to raise a contemporaneous objection can create a procedural bar unless, of course, a habeas petitioner can demonstrate cause for the default and actual prejudice. 
United States v. Wiseman, 297 F.3d 975, 979-80 (10th Cir.2002); 
see also 
McCracken v. Gibson, 268 F.3d 970, 976 (10th Cir.2001) (“We will not consider issues on habeas review ‘that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.’ ” (quoting 
Smallwood v. Gibson, 191 F.3d 1257, 1267 (10th Cir.1999))).        I concede that the disagreement in our cases that the majority cites may raise the question whether the procedural default rule in this context has been firmly established and regularly followed, thereby undercutting its efficacy as an independent and adequate state procedural grounds. 
See 
McCracken v. Gibson, 268 F.3d at 976.        However, I contend, nonetheless, that we should not intentionally increase the reach of the plain error rule without a careful understanding of how such an extension would affect our procedural default jurisprudence, and, how, in turn, our jurisprudence would 231 P.3d 58
 affect federal habeas corpus review. Depending upon one's viewpoint-defense counsel or prosecutor, for example-eliminating this procedural bar may, or may not, be a good idea. I respectfully submit that we need a full explication of this issue in order to decide whether it is a good idea.
B. Other Concerns        As the majority correctly observes, citing 
People v. Smith, 121 P.3d 243, 253 (Colo.App.2005) (Webb, J., specially concurring), requiring defendants to preserve these errors in the trial court before we review them will conserve precious judicial resources. This is a worthy goal.        By my informal survey, the court of appeals published twenty-two opinions in criminal cases in July and August of this year; five of them contained plain error analysis of at least one issue. I do not employ this crude figure to argue that we face plain error analysis in twenty-two percent of our criminal cases, but simply to point out that plain error is our constant companion, and that it is often employed for issues that, after we are done, are not seen as affecting substantial rights. In my view, this should not be so because “[r]eviewing courts are not to use the plain-error doctrine to consider trial court errors not meriting appellate review absent timely objection-a practice [the Supreme Court has] criticized as ‘extravagant protection.’ ” 
United States v. Young, 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (footnote omitted) (quoting 
Henderson v. Kibbe, 431 U.S. 145, 154 n. 12, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)).        This comment about limitations on the use of the plain error doctrine in 
Young recently, in part, prompted the Kansas Supreme Court to reverse its course and decline to review certain unpreserved evidentiary errors. 
State v. King, 288 Kan. 333, 348-49, 204 P.3d 585, 595-96 (2009) (“Although our past decisions may have relaxed the objection requirement in the evidentiary context, this practice has not only led to confusion as to the standards that should be applied on appeal, but also has de-emphasized the role of counsel at trial and has impaired the gate-keeping function of district courts in this state.”).        To increase the number of plain errors we already review by adding more arising out of unpreserved sentencing double jeopardy errors also seems to me to be inconsistent with another admonition in 
Young. There, the Supreme Court stated that unwarranted expansion of the scope of Fed.R.Crim.P. 52(b) “skew[s] the Rule's ‘careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly addressed.’ ” 
Young, 470 U.S. at 15, 105 S.Ct. 1038 (quoting 
United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).        Obvious injustices based on the Double Jeopardy Clause will not go unaddressed if we decline to review unpreserved errors on direct appeal. Sentences imposed in violation of the constitution may be reviewed in postconviction proceedings under Crim. P. 35(c). 
See 
People v. Wenzinger, 155 P.3d 415, 418 (Colo.App.2006); 
People v. Collier, 151 P.3d 668, 672 (Colo.App.2006) (claim that sentence violates double jeopardy is cognizable under Crim. P. 35(c)). By doing so, the initial review will occur in the trial court, where it belongs.        Although Crim. P. 52(b) is designed to ameliorate injustices visited upon criminal defendants by the application of the contemporaneous objection rule, it was not intended to render all objections superfluous. Plain error review is admittedly difficult for defendants to satisfy, but it should not and cannot substitute wholesale for the parties' obligation to inform the trial court of errors so that the court can correct those errors before they infect the proceedings. The main event is supposed to be the trial and the sentencing hearing, not the appeal. As the Supreme Court noted in 
Wainwright v. Sykes, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977):
The failure of the federal habeas courts generally to require compliance with a contemporaneous-objection rule tends to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event. A defendant has been accused of a serious crime, and this is the time and place set 231 P.3d 59
 for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the court-room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification.        In my view, the decision to review unpreserved allegations of constitutional sentencing errors such as those in this case is contrary to these principles. Doing so opens a door to plain error review that, at least from my perspective, we do not presently perform. Once a door like this one is opened, it is impossible to shut. For the reasons stated above, I would keep this door closed.        --------
Notes:        1. The crimes listed in section 18-1.3-401(10)(b) all include references to section 18-1.3-401(10)-for example under section 18-4-302, aggravated robbery “is an extraordinary risk crime that is subject to ... section 18-1.3-401(10)”-while sections 18-3-405 and 18-3-405.3 do not include such language.
--------