The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Michael L. McGRAW, Defendant–Appellant.

No. 99CA1704.

Colorado Court of Appeals, Div. II.

April 26, 2001.

As Modified on Denial of Rehearing June 7, 2001.

Certiorari Denied Sept. 10, 2001.

Ken Salazar, Attorney General, Dawn M. Weber, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Christopher H. Gehring, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge PLANK.

Defendant, Michael L. McGraw, appeals from the judgment of conviction entered upon jury verdicts finding him guilty of two counts of second degree arson. We affirm the judgment but remand for a restitution hearing and correction of the mittimus.

Defendant was charged with arson in connection with the burning of two vehicles within a ten-day period. The first vehicle belonged to his ex-girlfriend, the second to the ex-girlfriend's new boyfriend.

Prior to trial, defense counsel filed a motion seeking the exclusion of evidence of a statement allegedly made by defendant to his new girlfriend when she visited him during his pretrial incarceration. Defendant allegedly asked his new girlfriend to tell his ex-girlfriend that "she has been warned and her mother is next." Defense counsel argued that this evidence (the challenged evidence) was inadmissible evidence of bad character under CRE 404(b). The trial court ruled that the challenged evidence was admissible pursuant to CRE 404(b) for the limited purpose of showing defendant's motive for the crimes.

Upon conviction, defendant was sentenced to six years in a community corrections facility (ComCor). The trial court granted the prosecution 30 days from the date of the sentencing hearing in which to submit a restitution amount and informed defendant that he could request a restitution hearing after receiving notice of the amount. The court subsequently entered an order requiring restitution in the amount requested by the prosecution. Ten days later, defendant filed an objection to the amount of restitution and requested a hearing on the matter. No such hearing was held.

Defendant entered ComCor on July 17, 1999. On September 15, 1999, he was returned to the custody of the sheriff's office because he had violated a condition of his placement. A letter from ComCor informed the trial court that defendant had served 61 days of his sentence, from July 17 through and including September 15. Defendant then became suicidal, and on September 17, 1999, he was involuntarily hospitalized at the Colorado Mental Health Institute at Pueblo (CMHIP). He was released on October 1, 1999, but was rehospitalized shortly thereafter.

On October 22, 1999, the trial court resentenced defendant to six years in the Department of Corrections (D.O.C.), crediting him for 79 days spent in confinement prior to the ComCor sentence and 61 days spent in ComCor. Defendant was not credited for the period of September 16 to October 22, during much of which time he was at CMHIP.

I.

■ Defendant contends that the challenged evidence is improper character evidence and that the trial court violated CRE 404(b), as well as his constitutional rights to due process and trial by jury, by admitting it. He further contends that the trial court erred in admitting the challenged evidence under CRE 404(b) without first determining by a preponderance of the evidence that the

alleged statement was made and defendant made it. We disagree.

CRE 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

For other-act evidence to be admissible under CRE 404(b), it must (1) relate to a material fact; (2) be logically relevant, tending to make the existence of the material fact more or less probable; (3) be relevant independent of the inference that the defendant has a bad character and acted in conformity with that character in committing the crime; and (4) have probative value that is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto*, 795 P.2d 1314 (Colo.1990).

Before admitting other-act evidence, the trial court must be satisfied by a preponderance of the evidence that the other act occurred and the defendant committed the act. *People v. Garner*, 806 P.2d 366 (Colo. 1991).

The Colorado Rules of Evidence strongly favor the admission of relevant evidence. A trial court has substantial discretion in deciding the admissibility of evidence, and its ruling will not be disturbed absent an abuse of discretion. *People v. Quintana*, 882 P.2d 1366 (Colo.1994).

An abuse of discretion occurs only if the trial court's evidentiary ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Czemerynski*, 786 P.2d 1100 (Colo. 1990).

Here, the "other act" was defendant's threat against his ex-girlfriend's mother in the statement "she has been warned and her mother is next." The trial court applied the four-part *Spoto* test and found that this act related to the material fact of defendant's motive to commit the crimes, was logically relevant to defendant's motive, was relevant independent of an inference that defendant had a bad character and acted in conformity with that character, and had probative value that was not substantially outweighed by the danger of unfair prejudice. We perceive no abuse of discretion in the trial court's analysis.

While the better practice may be for a trial court to make explicit that it has found by a preponderance of the evidence that the defendant committed the other act, *People v. Garner, supra*, requires only that the trial court be "satisfied" of that fact.

Here, such a finding was implicit in the trial court's ruling that the evidence was admissible. *Cf. People v. Copeland*, 976 P.2d 334 (Colo.App.1998) (although trial court did not explicitly find that probative value of other-act evidence was not substantially outweighed by danger of unfair prejudice, such a finding was implicit in court's decision to admit evidence), *aff'd*, 2 P.3d 1283 (Colo. 2000).

More importantly, the court's ruling was not manifestly arbitrary, unreasonable, or unfair.

Accordingly, we perceive no abuse of discretion in the trial court's decision to admit the challenged evidence.

## II.

Defendant next asserts that the trial court violated the constitutional prohibition against double jeopardy when it increased the original sentence by later adding restitution. Alternatively, he argues that the restitution order should be vacated and the matter remanded to the trial court for a restitution hearing at which defendant and his counsel may be present. We agree with the latter contention only.

Once a legal sentence is imposed and a defendant has begun serving it, an *increase* in the amount of restitution ordered at sentencing violates the constitutional prohibition against double jeopardy. However, at the sentencing hearing the trial court may, without violating double jeopardy principles, defer determination of the amount of restitution to be imposed, subject to a later hearing.

*People v. Shepard,* 989 P.2d 183 (Colo.App. 1999).

Here, the trial court did not order restitution and then increase the amount of restitution after defendant had begun serving his sentence. Rather, the court indicated at the sentencing hearing that it would defer determination of the amount of restitution. Thus, the prohibition against double jeopardy was not violated. *See People v. Shepard, supra.*

We conclude, however, that defendant had a right to a hearing to contest the amount of restitution imposed. *See People v. Shepard, supra.*

The People do not dispute this right but assert that defendant waived it by failing to timely object to the proposed amount of restitution. We disagree.

At the first sentencing hearing, the trial court specifically stated that there would be a restitution hearing if defendant believed that to be appropriate. The court granted the prosecution 30 days to file a statement of restitution but did not specify a time within which defendant should respond to the statement. The record does not contain the prosecution's restitution statement, and, accordingly, we do not know when the statement was filed. The court's restitution order was entered 30 days after the sentencing hearing, and defendant filed his objection to the amount of restitution and request for a restitution hearing 10 days later.

Under these circumstances, we cannot conclude that defendant's request for a restitution hearing was untimely.

### III.

██ Next, defendant asserts that the trial court violated § 17–27–105(1)(e), C.R.S. 2000, when it resentenced him to six years in the D.O.C., because that sentence, when coupled with the three-year mandatory parole period, exceeds his original six-year ComCor sentence. We disagree.

Section 17–27–105(1)(e) provides:

If an offender is rejected after acceptance by a community corrections board or a community corrections program, the court may resentence the offender without any

further hearing so long as the offender's sentence does not exceed the sentence which was originally imposed upon the offender.

██ "Offender's sentence" refers only to the term of imprisonment ordered by the trial court as part of the resentencing and excludes the subsequent mandatory period of parole. *People v. Johnson,* 13 P.3d 309 (Colo.2000).

Accordingly, the trial court did not violate § 17–27–105(1)(e) when it imposed the six-year D.O.C. sentence, even though that sentence requires, pursuant to § 18–1–105(1)(a)(V)(A), C.R.S.2000, an additional mandatory three-year period of parole.

### IV.

Finally, defendant contends that the trial court erred in not crediting him for time he was confined after he left ComCor but before his D.O.C. sentence began. We agree.

Section 16–11–306, C.R.S.2000, provides in pertinent part:

A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his sentence for the entire period of such confinement.

### A.

Initially, the People argue that we should not consider defendant's contention because the issue is raised for the first time on appeal. We disagree.

██ We acknowledge that defendant did not raise this issue at the resentencing hearing. However, in the interest of judicial economy, we elect to consider defendant's contention as a motion under Crim. P. 35(c), which provides for postconviction relief if a sentence is not in accordance with the law. *See Graham v. Cooper,* 874 P.2d 390 (Colo. 1994) (in interest of judicial economy, court elected to address merits of claim brought by way of habeas corpus that should have been brought under Crim. P. 35(a)); *People v. Turman,* 659 P.2d 1368 (Colo.1983) (analyzing claim of sentencing error under Crim. P. 35(c)(2) and 35(c)(3)).

### B.

The People argue in the alternative that § 16–11–306 is inapplicable here because the period for which defendant seeks credit occurred *after* the imposition of his original sentence. We are not persuaded.

The People's position is contrary to the decision in *People v. Hoecher*, 822 P.2d 8 (Colo.1991), in which the supreme court interpreted § 16–11–306 to require a court, when resentencing an offender for violating the conditions of a community corrections placement, to credit the offender for time served as a resident of the community corrections facility. The court reasoned that failure to grant such credit would be tantamount to improperly increasing the length of the original sentence.

*Hoecher* was decided prior to the enactment of §§ 17–27–104(9) and 17–27–105(1)(j), C.R.S.2000, which together provide that an offender sentenced to the D.O.C. after placement in a community corrections program is entitled to credit for the number of days of residential placement completed. Nevertheless, we find the supreme court's reasoning in that case applicable here. There, as here, the time period for which the defendant sought credit occurred after the imposition of the original sentence but prior to the imposition of the D.O.C. sentence.

Accordingly, we conclude that the fact that defendant was sentenced prior to the time for which he seeks credit does not preclude the application of § 16–11–306.

### C.

The People also argue that § 16–11–306 does not apply in this case because defendant's hospitalization at CMHIP was for rehabilitation, not punishment, and further was totally independent of the criminal transaction for which he had earlier been sentenced. We disagree.

*Lange v. Schauer*, 184 Colo. 373, 520 P.2d 753 (1974), on which the People rely, is distinguishable from this case. There, the defendant escaped from custody while serving a sentence for larceny and subsequently was arrested and charged with joyriding. He was found not guilty by reason of insanity and ordered confined in a state hospital. The supreme court held that the defendant should not be given credit on his larceny sentence for the time he was confined in the hospital as a result of the joyriding charge because the confinement was totally independent of the criminal transaction for which he had previously been sentenced.

Here, in contrast, defendant was hospitalized while in custody for the same offenses for which he was later sentenced to the D.O.C. In such circumstances, it cannot fairly be said that defendant's hospitalization was independent of the criminal transaction for which he had earlier been sentenced within the meaning of *Lange v. Schauer.*

The People's reliance on *People v. Beecroft*, 862 P.2d 973 (Colo.App.1993), *aff'd*, 874 P.2d 1041, is also misplaced. In *Beecroft*, a division of this court held that time spent in a private drug treatment program was not "confinement" for purposes of § 16–11–306. The division based its decision in part on the fact that the suspended sentence the defendant was serving while participating in the drug treatment program was similar to probation. The division contrasted an offender in that situation with an offender sentenced to community corrections, stating that the former might be subject to some restrictions, but the latter is confined in a very real sense.

Here, defendant was confined in a very real sense during his stay at CMHIP. While it is true that the purpose of the confinement was treatment, not punishment, we conclude that the more important consideration is that defendant was confined. His situation was more like that of an offender in community corrections than that of an offender on probation.

Defendant was confined for the offense of arson prior to the imposition of the D.O.C. sentence for the same crime. Pursuant to § 16–11–306, he is entitled to credit against the term of that sentence for the entire period of the prior confinement. The period of the prior confinement consists not only of the 79 days defendant was confined before the ComCor sentence and the 61 days spent in ComCor, but also the 36 days from the day after the September 15 revocation of his

acceptance into ComCor to the imposition on October 22 of his D.O.C. sentence.

The judgment is affirmed, and the cause is remanded with directions to the trial court to conduct a restitution hearing and to amend the mittimus to reflect an additional 36 days' credit for time served.

JONES and CASEBOLT, Judges, concur.