JUSTICE MÁRQUEZ,
dissenting.
¶31 Two basic principles underlie the legislative and judicial history of Colorado’s statute governing presentence confinement credit (PSCC), section 18-1.3-405, C.R.S. (2017). First, a defendant is entitled to credit for the full period of her presentence confinement against the total term of her imprisonment. Second, a defendant is not entitled to dupli-cative credit. Put simply, for each day a defendant is confined prior to sentencing, she is entitled to one day—and only one day—of credit against her ultimate sentence.
¶32 I disagree with the majority’s decision in this case because it contravenes the principle that a defendant is entitled to credit for the full period of her presentence confinement against the total term of her imprisonment. Specifically, the majority’s holding would appear to deny any PSCC to a defendant who is confined on charges stemming from more than one jurisdiction before sentencing—even if the defendant is ultimately convicted on charges in only one jurisdiction. See maj. op. ¶ 3. Indeed, the majority’s logic would deny any PSCC even to a defendant confined on multiple charges in a single jurisdiction where the defendant is ultimately sentenced on a different, added charge. But we have repeatedly rejected such a severe framework for awarding PSCC. Instead, our precedents dictate that a defendant is entitled to PSCC toward the sentence on a particular charge if the charge “actually caused” the defendant’s presentence confinement, so long as the award would not result in dupli-cative credit.
¶33 As applied to this ease, I would conclude that Torrez was entitled to PSCC for the period between her arrest in 2004 and her sentencing on the Jefferson County charges in 2008. During this period of time, the Jefferson County charges “actually caused” Torrez’s confinement because the charges prevented her release from confinement: she was arrested on both Jefferson County and Denver County warrants, and she was subject to a $10,000 Jefferson County bond. Regardless of the status of the Denver County charges and the location of her confinement, she could not have secured her presentence release unless she posted the Jefferson County bond, which she never did. Moreover, awarding Torrez credit for the full period of her presentence confinement against the total term of her imprisonment would not result in duplicative credit here because there was no other sentence to which the PSCC could be awarded: Torrez had already been found not guilty by reason of insanity (NGRI) on the Denver County charges when she sought credit against her prison sentence on the Jefferson County charges.
¶34 The majority’s holding to the contrary mischaracterizes our long-established precedent on PSCC and fails to effectuate the purposes of the PSCC statute. For these reasons, I respectfully dissent.
I. The PSCC Statute
¶35 As stated above, two basic principles underlie Colorado’s scheme for awarding PSCC. First, a defendant is entitled to credit for the full period of her presentence confinement against the total term of her imprisonment. Second, a defendant is not entitled to duplicative credit. See, e.g., People v. Johnson, 797 P.2d 1296, 1299 (Colo. 1990) (directing trial courts to award PSCC “in a manner which furthers the goal of [the PSCC statute,] that is, to insure that defendants receive full, but not duplicative, credit for the period of presentence confinement attributable to the charge or conduct for which they were sentenced”).
¶36 The first principle—that an award of PSCC is mandatory—reflects.the history of the PSCC statute. The original version of the PSCC statute provided that a trial court was obligated to consider PSCC, but was not obligated to award it:
In sentencing a defendant to imprisonment the sentencing judge shall take into consideration that part of any presentence confinement which the defendant has under *197 gone with respect to the transaction for which he is to be sentenced.
Ch. 44, sec. 1, § 3941-306(1), 1972 Colo. Sess. Laws 190,249 (emphasis added)i ¶37 In 1979, the legislature’s first major amendment to the statute made PSCC mandatory, rather than discretionary:
A person who is confined • prior to the imposition of sentence is entitled to credit against the term of his sentence for the entire' period of such confinement.
Ch. 157, sec. 7, § 16-11-306, 1979 Colo. Sess. Laws 664, 665-66 (emphasis added).
¶38 Since the 1979 amendment, we have consistently recognized that defendants are statutorily entitled to PSCC. See, e.g., People v. Norton, 63 P.3d 339, 348 (Colo. 2003) (“[T]he 1979 amendment made PSCC mandatory.”); Fields v. Suthers, 984 P.2d 1167, 1172 (Colo. 1999) (“[The PSCC statute] mandates that presentence confinement in a jail facility becomes part of the time served on the convicted person’s sentence.” (quoting People v. Freeman, 735 P.2d 879, 881 (Colo. 1987))); Schubert v. People, 698 P.2d 788, 794 (Colo. 1985) (“The 1979 [amendment] ... grant[ed] an offender ‘who is confined prior to the imposition of sentence’ a statutory entitlement ‘to credit against the term of his sentence for the entire period of such confinement.’”). In other words, for each day a defendant is confined prior to sentencing, the defendant must earn one day of credit against her sentence, if the defendant is ultimately sentenced on any charge for which she was confined.
¶39 The mandatory award of PSCC has important ramifications. Mandatory PSCC protects indigent defendants “who, due to their inability to post bail ... would [otherwise] serve longer periods in jail than their wéalthier counterparts who were able to avoid presentence confinement by posting bail and thereby secure their presentence freedom.”[1] Schubert, 698 P.2d at 794. Mandatory PSCC also effectuates the statutory penalties set by the General Assembly by ensuring that a defendant who is convicted of an offense is confined for the legislatively prescribed period of time—and no longer. Cf. Norton, 63 P.3d at 346 (a court’s award of PSCC should not “vitiate the intent of the statutory penalty applicable to the crime for which the sentence was imposed”). And-mandatory PSCC guards against the added taxpayer expense of paying for superfluous confinement where a defendant serves a lengthy presentence confinement in addition to the legislature’s specified sentence of incarceration. This is a meaningful benefit, given that Colorado’s sentencing laws expressly recognize the budgetary impact of prolonged incarceration. E.g. §§ 18-1.3-302(l)(a)-(b), 16-11.3-Í01(l)(c)-(d), C.R.S. (2017).
¶40 The second principle—that an offender is not entitled to duplicative credit—is a logical corollary to the first principle. That is, while a defendant must receive one day 'of credit for each day of presentence confinement, she is entitled to only one day of credit against her total term of imprisonment.
¶41 The prohibition on duplicative credit was written into the original PSCC statute because the statute contained an important limitation: a defendant could receive credit only, for “presentence confinement which the defendant has undergone with respect to the, transaction for which he is to be sentenced.” Ch. 44, sec. 1, § 39-11-306(1), 1972 Colo. Sess. Laws 190, 249 (emphasis added). A defendant could not, for example, receive an award of credit against a sentence for charges that were prosecuted while a defendant was serving a sentence on an earlier, unrelated conviction. People v. Loggins, 628 P.2d 111, 112 (Colo. 1981). Such an award would result in duplicative credit because the defendant would receive two days of credit for each day served: one day of credit against the original sentence, and a second day of presentence credit against the later sentence on the charges brought while the defendant was already incarcerated.
¶42 Although the legislature omitted this “transaction” language when it amended the statute in 1979 to mandate the award of PSCC, we nonetheless construed the provi *198 sion to require some connection between the confinement and the charge for which the defendant sought credit, precisely to avoid duplicative credit. In Schubert, for example, we recognized that a contrary interpretation (i.e., awarding credit regardless of the cause of presentence confinement) would result in duplicative credit in certain circumstances, such as where an offender who, prior -to sentencing, was already serving time on ah earlier sentence, 698 P.2d at 795. Awarding duplicative credits in these circumstances, we reasoned, “not only would reward the multiple offender but also would vitiate, to the extent of such credit, the statutory penalty applicable to the crime for which a particular sentence is imposed,” Id. We therefore concluded that an award of credit was warranted only where there existed a “substantial nexus” between a- charge or conduct and the period of confinement for which the defendant sought credit, such that the charge or conduct “actually caused” the defendant’s presentence confinement. Id.
¶43 Similarly, in Massey v. People, ■ we reaffirmed that a defendant is entitled to PSCC only for a charge with a “substantial nexus” to the defendant’s presentence confinement so as to avoid awarding duplicative credit. 736 P.2d 19, 22-23 (Colo. 1987). There, we concluded that the defendant was not entitled to PSCC for time spent in Mesa County jail against his Pitkin County sentence, notwithstanding the fact that he was originally arrested on warrants from both counties, because the Pitkin County charges lacked a “substantial nexus” to the Mesa County confinement. Id. at 23. Although the Massey opinion focused on the jurisdiction of confinement, it did so as a means to avoid duplicative credit:
[Wjhere two or more charges form multiple bases for the defendant’s presentence confinement, the defendant is entitled to credit against each sentence imposed on those charges, as long as the credit would not be duplicative. A “substantial nexus” in that context means that the defendant would have remained confined in the sanie judicial district on the charge for which credit is sought in the absence of any other charge.
Id. (citations omitted) (emphasis added).
¶44 Our characterization of the legal standard in Massey was driven by the particular facts of that case. Importantly, because Massey’s Pitkin County charges did not prevent his release from the Mesa County jail, he was not entitled to credit against those charges. Id. (“The defendant has not proven, and the record does not establish, that the Pitkin County charges prevented the defendant’s release from the Mesa County jail or contributed to his confinement outside of Pit-kin County.”). In other words, Massey relied oh the jurisdiction'of confinement as a proxy for whether certain charges “actually caused” a defendant’s confinement in order' to avoid awarding duplicative credit: if the defendant received credit in the jurisdiction of confinement, he'could not also receive credit for this confinement elsewhere. And although Justices Lohr and Dubofsky dissented from the majority’s disposition of the case, all of the justices agreed with this basic legal framework, including the fact that a defendant is entitled to non-duplicative PSCC where multiple charges concurrently caused the preseh-tence confinement. Id. at 24 (Lohr, J., dissenting) (“As the majority acknowledges, á defendant is entitled to presentence confinement credit ‘for each charge that was an actual cause of the defendant’s incarceration prior to the imposition of the sentence.’” (quoting the majority opinion)).
¶46 In 1986, the legislature again amended the statute to reincorporate the causation limitation:
A person who is confined for an offense prior to the'imposition of sentence for said offense is entitled to credit against the term of his sentence for the entire period of such confinement.
Ch. 124, sec. 3, § 16-11-306, 1986 Colo. Sess. Laws 733, 734 (emphases added). We have treated the 1986 amendment as a codification of the “substantial nexus” test that we found to.be implicit in the statute in Schubert, and therefore, as a mechanism for avoiding dupli-cative credit. E.g., Beecroft v. People, 874 P.2d 1041, 1044-45 (Colo. 1994) (construing the amended statute as requiring a “substan *199 tial nexus” between the confinement and the charge for which the sentence is imposed (citing Schubert, 698 P.2d at 795)); People v. Hoecher, 822 P.2d 8, 12 (Colo. 1991) (same).
¶46 Finally, the legislature’s subsequent amendments to the statute have confirmed the principle that a defendant is not entitled to duplicative credit in any circumstance. In 1988, the legislature added language to prevent an award of duplicative credit to ah offender who commits a new offense while serving a sentence or on parole for a previous offense:
If a defendant is serving a sentence, or is on parole for a previous offense when he or she commits a new offense and he or she continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be granted against the sentence for the new offense.
Ch. 110, sec. 2, § 16-11-306, 1988 Colo. Sess. Laws 663, 663-64. This amendment was “intended to prevent duplicative PSCC being granted to inmates who committed another crime either when-they were incarcerated or when they had been released on discretionary parole.” Norton, 63 P.3d at 345.
¶47 Similarly in 2009, the legislature added language clarifying that if a defendant is confined pending a parole revocation hearing, the credit is to be awarded against the period of reincarceration:
A person who is confined pending a paróle revocation hearing is entitled to credit for the entire period of such confinement against any period of reinearceration imposed in the parole revocation proceeding. The period of confinement shall be deducted from the period of reincarceration by the department of corrections.
Ch. 105, sec. 3, § 18-1.3-405, 2009 Colo. Sess. Laws 382, 383. In short, every aspect of this history confirms that avoiding duplicative credit is a. foremost goal of the PSCC statute.
¶48 In light of the two basic principles underlying PSCC in Colorado, I understand the PSCC framework to provide that an award of PSCC is mandatory where a defendant is sentenced on a charge that “actually caused” his presentence confinement, so long as the award would not be duplicative. Contrary to the majority’s conclusion, “actual causation” in this context does not mean that the particular charge was a necessary condition or but-for cause of the confinement. Schubert, 698 P.2d at 795 (“causation in this context does not mean that the charge or conduct for which the sentence is to be imposed must be the exclusive cause of the offender’s confinement ”), Instead, “actual causation” requires only that the charge prevented the defendant’s presentence release, regardless of whether other charges also, “actually caused” the confinement.
¶49 Of course in awarding PSCC, a trial court must avoid awarding duplicative credit in instances where a defendant is confined and sentenced on multiple charges. To do so, “the trial court must exercise [its] discretion in a manner which furthers the goal of [the PSCC statute], that is, to insure that defendants receive full, but not duplicative, credit for the period of presentenee -confinement attributable to the charge or conduct for which they were sentenced.” Johnson, 797 P.2d at 1299, For a defendant who receives consecutive sentences, this means that the trial court must award credit against only one charge. Schubert, 698 P.2d at 795. By contrast, ■ for a defendant who receives concurrent sentences, the trial court must award credit against each charge, since concurrent sentences “in functional effect result in one term of imprisonment represented by the longest of the concurrent sentences imposed.” Id.
■ ¶50 The majority reaches a very different conclusion about the requirements of the PSCC statute—-namely, that a defendant is entitled to PSCC for an offense “only if the defendant would have been released from the confinement had that offense not existed.” Maj. op. ¶ 3. That is, according to the majority, the offense for which PSCC is sought must be the sole cause of the presentence confinement. But although the majority purports to adhere to our precedents/in reaching its conclusion, maj. op. ¶¶ 16, 24, the majority’s conclusion is actually a marked departure from our precedents because, we have *200 rejected its formulation of the “substantial nexus” test in at least five instances.[2] In this respect, I agree with Justice Hood’s conclusion in his separate dissent that neither the PSCC statute nor our interpretations of the statute support the majority’s novel formulation of Schubert’s “substantial nexus” test. See dis. op. ¶¶ 78, 83.
¶51 The flaw in the majority’s reasoning is that it inverts the “substantial nexus” inquiry by posing the' wrong counterfactua! question. The majority asks what would happen if the sentencing charge did not exist; in such a scenario, would the defendant have been released? Maj. op. ¶¶ 3, 21, 24. But our precedents—namely Schubert and Massey— instruct that we should ask the opposite question: what would happen if only the sentencing charge existed; in such a scenario, would the defendant have remained confined? See Massey, 736 P.2d at 23 (“A ‘substantial nexus’ ... means that the defendant would have remained confined in the same judicial district on the charge for which credit is sought in the absence of any other charge.”); Schubert, 698 P.2d at 795 (“If ... the defendant remains confined in [a] jurisdiction on all charges due to his inability to post bail, each charge would appropriately be considered a cause of the defendant’s presentence confinement.”). By asking the wrong question, the majority has mischarac-terized the “substantial nexus” inquiry.
¶52 Moreover, the understanding of the PSCC framework I have set forth does not represent a rejection of the majority holdings in Massey and Freeman and an adoption of Justice LohFs dissenting view. Those eases confirm the same legal standard I explain above: a defendant is entitled to PSCC if the charge for which credit is sought prevented the defendant’s release. We denied PSCC to those defendants, however, because on the appellate record in those cases, we concluded that the answer to the relevant question— whether the defendants would have remained confined on the sentencing charge if no other charges existed—was “no.” That is, we concluded that the charges for which they sought PSCC did not “prevent!] the defendants’] release” or “contribute!] to [the] confinement” for which they sought credit. Massey, 736 P.2d at 23; accord Freeman, 735 P.2d at 881. And as I have explained above, both the majority and dissenting opinions in Massey and Freeman agreed as to this basic legal framework, a framework that today’s majority dismisses in favor of its novel formulation of the “substantial nexus” test.
¶53 Finally, although I agree with much of Justice Hood’s separate dissent, I note my disagreement with his understanding of the PSCC framework. Justice Hood infers from the legislature’s- 1988 and 2009 amendments—which require courts to avoid awarding duplicative credit to offenders who are incarcerated or on parole—that the legislature authorized duplicative credit in other circumstances. Dis. op. ¶¶ 86-86. He would therefore conclude that a court generally may award credit against multiple charges, so long as those charges concurrently caused the defendant’s confinement. Id. at ¶ 87. But as I have explained above, avoiding duplica-tive credit in all circumstances has consistently been a foremost goal of Colorado’s PSCC scheme. I therefore conclude that the legislature’s 1988 and 2009 amendments are best understood as legislative patches to effectuate the general prohibition on duplica-tive credit in specific scenarios where the legislature realized that there otherwise existed a risk of awarding duplicative credit. See Norton, 63 P.3d at 345.
II. Application
¶54 I would conclude that Torrez was entitled to PSCC for the entire 1579-day period from her arrest in March 2004 through her sentencing in July 2008. First, Torrez was confined during this entire period—at times in Jefferson County, at times in Denver *201 County, and at times at the Colorado Mental Health Institute at Pueblo (CMHIP).[3]
¶55 Second, at all times, Torrez was confined “for” the Jefferson County assault charge to which she ultimately pled guilty. She was originally arrested on warrants from both Denver County and Jefferson County. And she was subject to a $10,000 Jefferson County bond, which she never posted. If the Denver County charges had been dismissed—or had never existed—Torrez’s confinement status would have remained precisely the same. In other words, regardless of her location, the Jefferson County charges had a “substantial nexus” to Torrez’s confinement because they caused her to remain confined. See Massey, 736 P.2d at 23 (“A ‘substantial nexus’ ... means that the defendant would have remained confined ... in the absence of any other charge.”). Although the Denver County charges and the eventual NGRI verdict caused Torrez’s confinement at a particular location, i.e., at CMHIP rather than some other facility, see maj. op. ¶ 21, in the absence of the Denver County charges Torrez still would have remained confined because of the Jefferson County charges for which she never posted bond; ‘
¶56 Third, awarding Torrez the full 1579 days of PSCC toward her sentence on the Jefferson County charges would not result in an award of duplicative credit. Although multiple charges concurrently caused Torrez’s confinement, she ultimately received only a single sentence. Thus, there is only one sentence to which the credit can be applied, and there is no risk of awarding duplicative credit. Nor would Torrez’s entitlement to PSCC change if she had been convicted of one or more of the other charges for which she was confined prior to sentencing. In such a circumstance, we have directed trial courts to exercise their discretion in allocating PSCC so as to ensure an award of full, but not duplicative, credit. Johnson, 797 P.2d at 1299.
¶57 The majority’s conclusion that Torrez is not entitled to PSCC produces an anomalous result. I doubt the legislature.intended this result when it has provided all defendants with a statutory entitlement to credit for the “entire period” of presentence, confinement attributable to the sentencing charge. See § 18-1.3-405;
III. Conclusion
¶58 The requirements of Colorado’s pre-sentence confinement statute are simple: one day of presentence confinement entitles a defendant to one day.of credit against her ultimate sentence—no more, no less. The majority, however, concludes that this principle apparently does not apply to defendants who are subject to charges in multiple jurisdictions, and indeed, its logic would deny any PSCC to a defendant confined on multiple charges.in a single jurisdiction where the defendant is ultimately sentenced on a different, added charge. Because that conclusion finds no support in the text of the statute or our long-established precedent, I respectfully dissent.

. Although we have retreated from our earlier position that protecting indigent defendants was the “obvious purpose” of the PSCC statute, Norton, 63 P.3d at 348, it is clear that mandatory PSCC, in practice, safeguards indigent defendants in this manner.

. See Johnson, 797 P.2d at 1298 (“The conduct need not be the exclusive cause of the defendant's confinement.,..”); Freeman, 735 P.2d at 881 ("In the presentence confinement context, the charges or conduct need not be the exclusive cause of'the defendant’s confinement....”); Schubert, 698 P.2d at 795 ("[Cjausation in this context does not mean that the charge or conduct for which the sentence is to be imposed must be the exclusive cause of the offender's confinement...."); Massey, 736 P.2d at 22 (same); Torand v. People, 698 P.2d 797, 800 (Colo. 1985) (same).

. Because the majority concludes that the Jefferson County charges lacked a "substantial nexus” to Torrez’s confinement, it does not reach the question of whether time spent at CMHIP constitutes "confinement" for purposes of PSCC. Maj. op. ¶ 21 n.8. I, however, would ’agree with the court of appeals’ conclusion that time spent at CMHIP constitutes "confinement” for, which an offender may receive PSCC. Torrez, ¶ 17; see People v. McGraw, 30 P.3d 835, 840 (Colo. App. 2001) (concluding that an offender, while involuntarily hospitalized at CMHIP, was “confined in a very real sense”).